11th Court of Appeals
Eastland, Texas
Opinion
 
Damion Dion Warren
            Appellant
Vs.                  No. 11-03-00260-CR -- Appeal from Harris County
State of Texas
            Appellee
 
            Appellant, Damion Dion Warren, appeals the conviction of recklessly causing serious bodily
injury to a child younger than 15 years of age. TEX. PEN. CODE ANN. § 22.04 (Vernon 2003). 
The jury assessed punishment at 20 years confinement. Appellant contends in one point of error that
the evidence is factually insufficient to support his conviction. Specifically, appellant argues that
the evidence is factually insufficient to establish that he was the person who actually committed the
offense. We affirm.
Standard of Review
            In order to determine if the evidence is factually sufficient, we must review all of the
evidence in a neutral light and determine whether the evidence supporting guilt is so weak that the
verdict is clearly wrong and manifestly unjust or whether the evidence contrary to the verdict is so
strong that the beyond-a-reasonable-doubt burden of proof could not have been met. Zuniga v. State,
144 S.W.3d 477 (Tex.Cr.App.2004); Ross v. State, 133 S.W.3d 618 (Tex.Cr.App.2004); Zuliani v.
State, 97 S.W.3d 589, 595 (Tex.Cr.App.2003); Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958
S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).
            The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the
weight to be given to their testimony. TEX. CODE CRIM. PRO. ANN. arts. 38.04 & 36.13 (Vernon
1979 & 1981). Deference is given to the jury verdict, as well as to determinations involving the
credibility and demeanor of witnesses. Cain v. State, supra at 407. We will set aside a verdict only
if the evidence supporting the verdict is so weak as to render the verdict clearly wrong and
manifestly unjust or if the evidence contrary to the verdict is so strong that the State’s burden of
proof could not have been met. A clearly wrong and manifestly unjust verdict occurs where the
jury’s finding “shocks the conscience” or “clearly demonstrates bias.” Clewis v. State, supra at 135;
see also Zuniga v. State, supra; Cain v. State, supra.
Evidence at Trial
            Appellant lived with Iso Thomas and her 21-month-old son, Jalen Thomas. Periodically
throughout the day of January 31, 2002, Jalen was under the sole care of appellant while Thomas ran
several errands. 
            At approximately 1:45 p.m., paramedic Wesley Hurst was dispatched to Thomas’s apartment
in response to a report of a child not breathing. Jalen was given CPR until his pulse returned; he was
then transported to Texas Children’s Hospital. At Texas Children’s Hospital, Jalen was first under
Dr. Michelle Anderson Lyn’s care in the emergency room where Dr. Lyn described him as critical. 
While Jalen was in the emergency room, he was on a ventilator and was given medications to
maintain his blood pressure and heart rate. 
            At 6:28 p.m. Jalen underwent a CAT scan. Dr. Jill Vanesssa Hunter testified that the CAT
scan revealed two major findings: (1) subdural blood and (2) abnormal coloration to the brain. Dr.
Hunter further testified that a variety of mechanisms could cause this, including shaken baby syn-drome. Dr. Hunter expressed her opinion that these injuries most likely occurred within the last 12
to 6 hours. After the CAT scan, Jalen was moved to the intensive care unit (ICU) where he was
under the care of Dr. Stephanie Horwitz Abrams. 
            Dr. Abrams met with Thomas, appellant, and several other family members. They spoke for
approximately 45 minutes about the events that transpired that day. Dr. Abrams testified that
appellant told her that, at about 1:00 p.m., appellant left Jalen standing up on the edge of the couch,
holding on to the side rail. Appellant said that he left Jalen alone for approximately 20 minutes. 
When appellant returned, he found Jalen lying on his right side on the ground next to the couch with
his upper arms shivering, his eyes rolled back, and with pink milk coming from his mouth. 
Appellant ran over to Jalen, picked him up, and tried to pat him on the back. Appellant said Jalen’s
head was hanging over to the side. When Jalen did not move, appellant went to the phone and called
911. 
            Dr. Abrams pointed out some inconsistencies between the story that appellant told her and
Jalen’s injuries. Dr. Abrams testified that, when the exterior of Jalen’s head was examined, there
were no fractures and there were no swellings or abnormalities of the cranium. Dr. Abrams testified
that a full eye exam was performed on Jalen and that retinal hemorrhages were found. Dr. Abrams
concluded that the combination of subdural bleeding, with little or no external trauma, and retinal
hemorrhages was most likely caused by shaking an infant. 
            Dr. Laura Jean Piippo testified that she had performed a complete eye examination on Jalen
early on February 1, while Jalen was in ICU. Dr. Piippo found hemorrhages on Jalen’s retina which
she described as “abnormal finding[s].” Dr. Piippo concluded that the most common cause of such
hemorrhages is a rapid acceleration/deceleration type of injury, “similar to a whiplash type of injury
you might see with...a child being shaken.” 
Analysis
            Appellant argues that the jury could not find him to be the cause of Jalen’s injuries because
the State’s evidence proved only that the injury occurred sometime within the 24 hours preceding
the CAT scan. Appellant contends that, because no specific time for the injury was established, the
jury could not reasonably infer that these injuries occurred while Jalen was under the sole care of
appellant. 
            At 6:28 p.m. on the day Jalen was admitted to Texas Children’s Hospital, a CAT scan was
performed on Jalen. Dr. Abrams, Jalen’s ICU doctor, testified that she reviewed the CAT scan. 
From the appearance of the blood on the CAT scan, it appeared that the injuries were new in the
sense that they were only hours old. 
            Dr. Hunter, Jalen’s pediatric neuroradiologist, testified that she would not expect the injuries
to have occurred more than six hours prior to the CAT scan. This placed the injuries no earlier than
12:28 p.m. Appellant was alone with Jalen at that time. 
            Dr. Harminder Narula, Harris County Assistant Medical Examiner, placed the injuries at the
time Jalen became symptomatic. Dr. Abrams testified that appellant told her that appellant was
alone with Jalen when he went to the restroom. Upon his return, Jalen was on the floor shaking. Dr.
Abrams’s testimony could lead a reasonable jury to infer that Jalen’s injuries were sustained while
Jalen was in appellant’s sole care. 
            The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the
weight to be given to their testimony. Articles 38.04 & 36.13. Several doctors testified as to the
possible time frame that these injuries could have occurred. While counsel for appellant vigorously
questioned each doctor for other possible causes of Jalen’s death, a reasonable jury could have found
that none of the doctors gave a plausible alternative explanation. The jury reasonably concluded that
Jalen’s injuries were sustained while he was in the sole care of appellant. 
            We hold that the evidence is factually sufficient to support the jury’s verdict. We overrule
appellant’s sole point of error.
This Court’s Ruling
            The judgment of the trial court is affirmed.
 
                                                                                    TERRY McCALL
                                                                                    JUSTICE
 
January 6, 2005
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.