Pablo **GASTON**, Jorge Antonio Rivas, Susan Mary Polouski, Sylvester Hackett, James Naccari, Jennifer Ortiz, Anna Denise Solis, Appellants,

v.

The **STATE** of Texas, Appellee.

Nos. 01–07–00242–CR, 01–07–00243–CR, 01–07–00244–CR, 01–07–00245–CR, 01–07–00246–CR, 01–07–00247–CR, 01–07–00248–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 30, 2008.

Discretionary Review Refused April 22, 2009.

Robert Morrow, The Woodlands, TX, for Appellants.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Eric Kugler, Jessica Caird, Assistant District Attorneys of Harris County, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HIGLEY.

## OPINION

SHERRY RADACK, Chief Justice.

A jury found appellants, Pablo Gaston, Jorge Antonio Rivas, Susan Mary Polouski, Sylvester Hackett, James Naccari, Jennifer Ortiz, and Anna Denise Solis, guilty of obstructing a street, and the trial court assessed punishment at five days' confinement with credit for five days served for all defendants except Hackett, whose punishment was assessed at three days' confinement with credit for three days served. In their sole point of error, appellants contend the evidence is legally insufficient. We affirm.

## BACKGROUND

On November 14, 2006, Lieutenant T. Muise of the Houston Police Department (HPD) met with two members of the Services Employees International Union (SEIU), Dan Slaterman and Susan Polouski, about a demonstration that was being planned by the SEIU to protest the low pay and lack of insurance benefits given to union members. At the meeting, Slaterman and Polouski asked HPD to take a "hands-off approach" to the planned protestors. HPD refused, and Muise told Slaterman and Polouski that if the protestors blocked intersections or streets, they would be arrested.

On November 16, 2006, at around 3:45 in the afternoon, Muise went to the Chase Tower Building in the 600 block of Travis Street. When he did not see any protests at that location, he went to Louisiana Street, where he saw approximately 200 people protesting. Muise determined that the protestors at the Louisiana Street were obeying the law, but he began to suspect that the Louisiana Street demonstration was a diversion for another protest that would take place in downtown. Therefore, Muise ordered the mounted police, led by Sergeant J. Meyers, back to the Travis Street location.

At the Travis Street location, there were two groups of protestors. One group was handcuffed together around a tower surrounded by garbage bags that had been erected in the intersection. A second group was handcuffed together in a line next to two cars that had been parked in the intersection.

At 4:45 p.m., Officer T. Warren was directed to respond to the protest at the Travis Street location. As he drove up, he saw appellant Polouski handcuffing people together in the intersection. Before leaving his car, Warren used his public address system (PA) to announce to the group, "You're violating the law. You're blocking the intersection. You need to move now." Warren made the announcement four times before getting out of his car to assist other police officers.

After Warren made his announcements, mounted patrol officers entered the intersection. Sergeant Meyers testified that he saw 40–50 people standing in a circle in the intersection blocking traffic. He ordered the officers on horseback into a line formation and began moving the horses forward at a slow pace. Meyers testified that all of the officers were telling the protestors, "Get out of the street. Get out of the street. Move. Get out of the street." Rather than move, many of the protestors sat down or intentionally pushed against the horses. The officers on foot then began pulling people out of the street. Forty-six people, including appellants, were arrested that day.

Sergeant P. Galvan testified that he yelled at the protestors in the street, "Please stand up and get out of the intersection." The protestors refused to get up and had to be lifted from the street. Galvan testified that he participated in the arrests of all appellants in this case, except Polouski, who was arrested by another officer.

Sergeant S. Murdock testified that his response team approached the group of protestors that was lined up across the two cars blocking the intersection. As he unhandcuffed each of the protestors, he warned them each three times that they were violating the law and that they needed to move. When the protestors refused to leave, they were arrested. None of the appellants in this case were arrested by Murdock and his response team.

Because the demonstration occurred during rush hour, traffic was backed up in the area for blocks before the protestors

were arrested. Several of the officers responding to the scene had to drive the wrong direction on one-way streets to reach the location. Lt. Muise testified that he had to park his car and walk to the location because he was unable to get through the traffic.

## SUFFICIENCY OF THE EVIDENCE

In their sole point of error, appellants contend the evidence is legally insufficient. Appellants do not contend that the State failed to prove the elements of the offense of obstructing a street, as set forth in section 42.03 of the Penal Code. Instead, appellants claim that the State failed to prove that the police warned appellants to move out of the street before arresting them, as required by section 42.04 of the Penal Code. The State responds that (1) section 42.04 is a defense, not an element of the charged offense and; therefore, the State had no burden of proof on the issue of whether a warning was issued; (2) appellants failed to meet their burden of proof to raise the defense set forth in section 42.04 of the Penal Code; and (3) even if appellants did raise the defense, the evidence is legally sufficient to show that such a warning was given.

### *The Statutes*

Article 42.03, under which appellants were charged, provides as follows:

(a) A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:

(1) obstructs a ... street ... or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others[.]

. . . .

(b) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.

TEX. PENAL CODE ANN. § 42.03 (Vernon 2003).

Article 42.04 further provides:

(a) *If conduct that would otherwise violate ... Section 42.03 ... consists of* speech or other communication, of gathering with others to hear or observe such speech or communication, or of *gathering with others to picket* or otherwise express in a nonviolent manner a position on social, economic, political, or religious questions, *the actor must be ordered to move,* disperse, or otherwise remedy the violation prior to his arrest *if he has not yet intentionally harmed the interests of others* which those sections seek to protect.

. . . .

(c) *It is a defense* to prosecution under ... Section 42.03 ...:

(1) *that in circumstances in which this section requires an order no order was given;*

(2) that an order, if given, was manifestly unreasonable in scope; or

(3) that an order, if given, was promptly obeyed.

TEX. PENAL CODE ANN. § 42.04 (Vernon Supp.2008) (emphasis added).

### *Element or Defense?*

■ Appellants argue that they were convicted of "a specially-defined, combined offense, with its own defense." "It is [appellants'] position that [section 42.04] by its own terms defines a particular unique offense in subsection (a), before it provides the defense in subsection (c) notwithstanding its title." Specifically, appellants argue that the evidence "was legally insufficient to establish the 42.04(a) elements, or dis-establish the 42.04(c) elements, which were necessary to support the jury's ver-

dict[.]" It is appellants' contention that the requirements or 42.04(a) were "elements of the offense" and part of the State's burden of proof. Specifically, appellants argue that the State had to prove that police officers warned appellants to get out of the street before they arrested them.

The State responds that, because section 42.04 is a defense to prosecution for obstruction of a street, it had no burden of proof regarding any of the "elements" set forth in section 42.04(a). Thus, the first issue this Court must address is whether section 42.04 is a "special offense," or whether it is a defense.

The Penal Code provides as follows:

(a) A defense to prosecution for an offense in this code is so labeled by the phrase: "It is a defense to prosecution...."

(b) The prosecuting attorney is not required to negate the existence of a defense in the accusation charging commission of the offense.

(c) The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense.

(d) If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted.

(e) A ground of defense in a penal law that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequences of a defense.

TEX. PENAL CODE ANN. § 2.03 (Vernon 2003). The Penal Code defines an "Element of offense" as:

(A) the forbidden conduct;

(B) the required culpability;

(C) the required result; and

(D) the negation of any exception to the offense.

TEX. PENAL CODE ANN. § 1.07(22) (Vernon Supp.2008).

An "exception" to an offense is "so labeled by the phrase: 'It is an exception to the application of....'" TEX. PENAL. CODE ANN. § 2.02(a) (Vernon 2007). The State must negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or his conduct does not fall within the exception. *Id.* at 2.02(b).

With these definitions in mind, we decide whether section 42.04 contains "elements" of the offense that the State must prove or negate, or whether it is a defense.

We begin by noting that section 42.04 is entitled, "Defense When Conduct Consists of Speech or Other Expression." Thus, the title suggests that the section provides a defense, not further elements of the crime. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005) (providing that title may be considered in construing statute). Section 42.04(c) contains the phrase, "It is a defense to prosecution...." The Penal Code requires that defenses contain this phrase. TEX. PENAL. CODE ANN. § 2.03.

There is nothing in the language of section 42.04(a) to suggest that it contains any elements of an offense. There is no forbidden conduct, no required culpability, no required result, and no exception to the offense. Were section 42.04 an exception to the offense of obstruction of a street, it would be labeled by the phrase, "It is an exception to the application...." *See* TEX. PENAL. CODE ANN. § 2.02.

In *Robles v. State*, 803 S.W.2d 473, 475 (Tex.App.-El Paso 1991, no pet.), the defendant argued that section 42.04 was an exception to section 42.03, and, as such, should have been pled in the information.

*Id.* The court disagreed, holding that section 42.04 was a defense, not an exception. *Id.* at 477.

Based on our review of the applicable statutes, we conclude that section 42.04 provides a defense to prosecution for obstruction of a street. Having decided that section 42.04 is a defense, we next consider the effect of that decision on the burdens of proof in the case

### Standard of Review as Applied to Defenses

In a legal sufficiency review, we consider the entire trial record to determine whether, viewing the evidence in the light most favorable to the verdict, a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex.Crim.App.2005); *McClesky v. State,* 224 S.W.3d 405, 409 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). In conducting our review of the legal sufficiency of the evidence, we do not reevaluate the weight and credibility of the evidence, but ensure only that the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex. Crim.App.1993).

■ A defendant has the burden of producing some evidence to support a claimed defense. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App.2003). If the defendant produces that evidence, the State bears the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion does not require that the State produce evidence; it requires only that the State prove its case beyond a reasonable doubt. *Id.* A defense is a fact issue to be determined by the jury, which is free to accept or reject the defensive issue. *See Saxton v. State,* 804 S.W.2d 910, 913–14 (Tex.Crim.App.1991). When

reviewing the legal sufficiency of the evidence concerning the jury's rejection of a defense, we look to whether any rational jury could have found against appellant on the defense issue beyond a reasonable doubt. *See Saxton,* 804 S.W.2d at 914; *McClesky,* 224 S.W.3d at 409–10. We measure sufficiency by applying a "hypothetically correct" jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

### Was the Section 42.03 Defense Raised?

■ The State argues that appellants did not present "some evidence" to support their claimed 42.04 defense; thus, the defense was erroneously included in the charge. We first consider what evidence is necessary to raise such a defense. Article 42.04(c) provides, "It is a defense to prosecution under ... Section 42.03 ... that in circumstances in which this section requires an order no order was given[.]" Thus, to raise the 42.04 defense, appellants must present some evidence that (1) circumstances required an order, and (2) no order was given.

Appellants presented evidence by two witnesses, Susan Strubbe and David Atwood, that they did not hear the police officers give any warnings to appellants before arresting them. Thus, appellants have produced some evidence that no order was given.

However, appellants were also required to introduce some evidence that the circumstances required an order. Section 42.04(a) requires an order when the defendant's conduct would be a violation of the offense of obstructing a street, but (1) the conduct consists of speech or communication or gathering of others to picket or express in a nonviolent manner a position on social, economic, political or religious questions, and *if* (2) the defendant has not

yet intentionally harmed the interests of others that the obstruction statute seeks to protect. TEX. PENAL CODE ANN. § 42.04.

It is undisputed that appellants' conduct was intended as speech on a social or economic issue. Appellant were protesting the low wages and lack of insurance benefits for union members.

However, the State argues that there is no evidence in the record to show that, at the time they were arrested, appellants had not yet harmed the interests of others that the obstruction statute seeks to protect. We agree. The record conclusively establishes that the interests of those the obstruction statute seeks to protect had, in fact, already been harmed before appellants were arrested. There is evidence in the record that, before police arrived and began arresting appellants and the other protestors, traffic was backed up for blocks in downtown Houston. Lieutenant Muise testified that he could not get through the traffic to get to appellants' location in his car, and he had to park and walk part of the way. Other officers testified that they were able to reach the scene because the traffic disturbance caused by appellant's actions allowed the officers to travel the wrong way on one-way streets. The record also shows that it was 4:45 p.m.—just before the evening rush hour—when appellants and the other protestors rushed into the intersection and handcuffed themselves together, thus causing an immediate traffic disturbance.

Appellants argue, nevertheless, that applying the section 42.04 defense to require an order to disperse only when the interests of others had not already been harmed would lead to an absurd result. Specifically, appellants argue that there would be no free speech defense in cases

in which the group's conduct has already begun to create an obstruction, and that this cannot have been the Legislature's intent. We disagree.

Appellants confuse creating an obstruction with intentionally harming the interest of others. As the State points out, it is a crime to create an obstruction, i.e., to render a street impassable, even if no person is actually impeded from passing. TEX. PENAL CODE ANN. § 42.03(b). In such cases, if the obstruction was created as a result of conduct consisting of speech, the defendant would be entitled to receive a dispersal order before being arrested.[1] However, by choosing to block the intersection during rush hour traffic, appellants created not only an obstruction that violated section 42.03, but immediately "harmed the interests of others" the statute was designed to protect, thus negating application of the 42.04 defense.

Because appellants presented no evidence that, at the time they were arrested, they had not yet harmed the interests of others the 42.03 obstruction statute was designed to protect, they did not satisfy their burden of proof on their defensive issue, and the burden of persuasion never shifted to the State. Thus, the State was not required to prove that someone in authority ordered appellants to move, disperse, or otherwise remedy the obstruction violation. See Zuliani, 97 S.W.3d at 594. There being no other appellate challenge to the sufficiency of the evidence, we hold that the evidence is legally sufficient to sustain appellants' convictions.

### Was a Warning Given?

As stated above, a rational jury could have found that the defense was not applicable because the undisputed evidence

---

1. For example, if appellants had erected their tower in the street during the night, and no cars had yet been prevented from passing, they would be entitled to an order to remedy the violation before being arrested.

showed that appellants were not entitled to a 42.04 dispersal order because they had already harmed the interests of others that section 42.03 was designed to protect.

Yet, even if we were to conclude that appellants' carried their burden to raise the 42.04 defense, we conclude that a rational juror would be justified in finding against appellant on the defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914; *McClesky*, 224 S.W.3d at 409–10.

A rational jury could also have found against appellants on the defensive issue because there was evidence that, regardless of whether a dispersal order was required, such an order was in fact given. Officer Warren testified that, when he approached the scene in his car, he activated his public address system and announced, "You're violating the law. You're blocking the intersection. You need to move now." Officer Warren stated that he made this announcement four times before the mounted patrol officers began clearing the intersection. Lieutenant Muise testified that he issued verbal commands to the group to "Get out of the street. Get out of the street." Likewise, Sergeants Meyers and Galvan testified that they were yelling at the protestors to get out of the street.

■ However, appellants argue that only Sergeant Murdock's arrests were "righteous," because he gave an individual dispersal order to each protestor before arresting him or her. While Sergeant Murdock's thoroughness is admirable, there is nothing in the law that requires that, in the cases in which a dispersal order is required, the order be given individually to each protestor. *See Barron v. State*, 43 S.W.3d 719, 722–24 (Tex.App.-El Paso 2001, no pet.) (holding that reasonable jury could conclude that warning given to leader of protest was conveyed to

defendant, who was never warned individually).

In *Lewis v. State*, 2001 WL 259131, *1–2 (Tex.App.-Dallas 2001, no pet.), several anti-fur protestors carrying large pipes had gathered outside a Neiman Marcus department store. *Id.* An off-duty police officer, recognizing that protestors often chain themselves through pipes, approached the group and told them that they would not be allowed to lock themselves together and block the doorway, and that if they did so, they would be arrested. *Id.* Two and one-half hours later, three people ran from a vehicle carrying pipes and chains. *Id.* An officer yelled, "Stop! Don't do that." *Id.* The protestors were then arrested as they attempted to chain themselves together in front of the doorway. *Id.* On appeal, the defendant argued that the evidence was insufficient because the police officers did not order her to move. *Id.* The court held that the jury "was not unreasonable in interpreting the first officer's warning to appellant and the others that they would be arrested if they chained themselves together in front of the entrance—combined with the other officer's entreaty to stop and not carry out their plans—as an order to move, disperse, or otherwise remedy the situation." *Id.*

Similarly, in this case, the police met with union representatives Dan Slaterman and Susan Polouski before the protest and told them that if protestors blocked the intersections during the planned protest, they would be arrested. At the scene of the protest, Officer Warren used the PA system in his car and announced to the group of protestors that they were breaking the law and needed to get out of the street. Officers on horseback and on foot were yelling at the protestors to get out of the street. Based on this evidence, a reasonable jury could have (1) concluded that appellants had, in fact, been warned to

clear the intersection, and (2) found against appellants on their 42.04 defense beyond a reasonable doubt.

We overrule appellants' sole point of error.

## CONCLUSION

We affirm the judgments of the trial court.