Opinion issued January 8, 2009








In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00010-CR






JOSHUA RAY JUAREZ, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause No. 1096823






MEMORANDUM OPINION


 Appellant, Joshua Ray Juarez, pleaded not guilty to the offenses of the capital
murder of Deborah and Lucy Maloney. A jury found him guilty. The trial court
assessed punishment at life in prison and certified appellant's right to appeal. 
Appellant presents three points of error, all of which challenge evidentiary rulings by
the trial court. We affirm.

Background Facts


 On December 13, 2006, at about 11 a.m., Houston Police officers who
responded to a 911 emergency call found Deborah and Lucy stabbed to death in an
apartment that adjoined appellant's apartment. There were signs of a struggle, and
both women were lying in pools of blood. Each woman had sustained multiple, deep
stabbings as well as broken bones. Police later learned from family members that the
Maloneys' car was missing. 

 At 10:45 a.m. on December 13, 2006, appellant arrived by car at the apartment
of a friend who lived in a nearby apartment complex. While at the friend's
apartment, appellant directed his friend's attention to a car outside in the parking lot,
and he told the friend and her male visitor that he had stolen the car from his
neighbor. Appellant later told his friend's male visitor that he had killed the
neighbor and another person by stabbing them. Appellant asked the male visitor for
help to dispose of some clothing, but the visitor refused. The friend and her visitor
later relayed to police the substance of both conversations with appellant.

 Police located the Maloney car in the parking lot where appellant had pointed
out the car to his friend and her visitor. Police were able to lift DNA evidence from
the steering wheel and the gearshift knob and to obtain scent from the steering wheel
and driver's seat of the car. The officers used police bloodhounds to track the scent
over three and a half miles to appellant's apartment complex. A bloodhound
approached the Maloney apartment first and then approached appellant's apartment.

 After interviewing appellant's immediate neighbors, police learned that
appellant had knocked on the door of Ryan Smith, at about 9:30 a.m. on the morning
of the murders. Smith explained that he felt uneasy and did not open the door, but
that he saw appellant approach the Maloney apartment. Smith also confirmed that
his dog Becker soon began "crazy barking" and that the hair on the back of Becker's
neck stood up. When Smith took Becker outside, the dog continued barking while
directing its attention to the Maloney apartment.

 While at the home of a friend later on the day of the murders, appellant was
speaking with the friend's mother, Lessa Sheppard, whom he sometimes called
"mom," and asked her "how [she] would feel toward him if the police said that he
had killed the two ladies." When police interviewed Sheppard the next day, she
reported to them what appellant had said. Sheppard also told the officers that
appellant had been acting strange while speaking with her and told her that police
might be looking for him. 

 Appellant provided two statements to police detectives after his arrest. In the
first statement, appellant claimed that he acted as only an accomplice to a murder
committed by someone else. Appellant claimed that he provided the knife used in
the murders and the means of gaining entry to the Maloney apartment and that he
acted as the lookout for the murderer. In the second statement, appellant told
officers where he had discarded the keys to the Maloney car; he also admitted cutting
the telephone cord in their apartment so that they could not seek help. 

 Standard of Review


 An appellant who contends that the trial court erred by admitting evidence
must preserve error by obtaining a ruling that this Court may review. See Tex. R.
App. P. 33.1; Tex. R. Evid. 1.03. We review rulings admitting evidence claimed to
be hearsay for abuse of discretion. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim.
App. 2003). A trial court abuses its discretion when it so deviates from applicable
guidelines and principles that the decision is considered outside the zone of
reasonable disagreement. See id. 

 A defendant's right to confront and cross-examine the witnesses against him,
pursuant to the Confrontation Clause of the U.S. Constitution's Sixth Amendment,
is not implicated if a hearsay statement is nontestimonial in nature. Woods v. State,
152 S.W.3d 105, 113-14 (Tex. Crim. App. 2004) (citing Crawford v. Washington,
541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004)). Statements that are testimonial in
nature include "'prior testimony at a preliminary hearing, before a grand jury, or at
a former trial; and [in response to] police interrogation'"; casual remarks made
spontaneously to acquaintances are not testimonial. See id. (quoting and citing
Crawford, 541 U.S. at 68, 124 S. Ct. at 1374). If the statement in question falls
within a firmly rooted hearsay exception, reliability can be inferred, and the
statement may be found to be per se reliable for Confrontation Clause analysis. 
Guidry v. State, 9 S.W.3d 133, 149 (Tex. Crim. App. 1999); see Crawford, 541 U.S.
at 67-68, 124 S. Ct. at 1372-74 (suggesting that otherwise reliable nontestimonial
hearsay falls outside scope of Sixth Amendment's Confrontation Clause).

Testimony of Lessa Sheppard


 In his first point of error, appellant contends that the trial court erred by
admitting Lessa Sheppard's testimony that appellant asked her "how [she] would feel
towards him if the police said that he had killed the two ladies." Appellant argues
that the trial court improperly admitted this evidence under the exception to the
hearsay rule for a statement against interest, see Tex. R. Evid. 803(24), and that
admitting the evidence violated appellant's Sixth Amendment right of confrontation. 


 "Hearsay" is a statement, other than one made by the declarant while testifying
at the trial or hearing, offered in evidence to prove the truth of the matter asserted. 
Tex. R. Evid. 801(d). Hearsay is inadmissible except as provided by statute or rules
prescribed pursuant to statutory authority. Tex. R. Evid. 802. A hearsay statement
against a person's interest may be properly admitted, by exception, if the statement

 was at the time of its making so far contrary to the declarant's
pecuniary or proprietary interest, or so far tended to subject the
declarant to civil or criminal liability . . . or to make the declarant an
object of hatred, ridicule, or disgrace, that a reasonable person in
declarant's position would not have made the statement unless
believing it to be true. In criminal cases, a statement tending to expose
the declarant to criminal liability is not admissible unless corroborating
circumstances clearly indicate the trustworthiness of the statement.


Tex. R. Evid. 803(24).


 The first inquiry required by rule 803(24) is whether the statement tended to
expose the declarant to criminal liability. Davis v. State, 872 S.W.2d 743, 747 (Tex.
Crim. App. 1994). The second inquiry asks whether corroborating circumstances
clearly indicated the trustworthiness of the statement. See Tex. R. Evid. 803(24);
Woods, 152 S.W.3d at 113. A hearsay statement is admissible under rule 803(24)
if it satisfies both of these inquiries. Id.

 There is no definitive test by which to assess corroborating circumstances for
purposes of rule 803(24), but the burden to produce evidence that clearly indicates
trustworthiness is on the party who seeks to admit the statement, in this case, the
State. See Davis, 872 S.W.2d at 749. A number of factors can guide the trial court
in deciding whether the circumstances show that a statement is trustworthy,
including the following: (1) whether the guilt of the declarant is inconsistent with
the guilt of the defendant, (2) whether the declarant was so situated that he or she
might have committed the crime, (3) the timing of the declaration, (4) the spontaneity
of the declaration, (5) the relationship between the declarant and the party to whom
the statement was made, and (6) the existence of independent corroborating facts. 
Woods, 152 S.W.3d at 113; Dewberry v. State, 4 S.W.3d 735, 751 (Tex. Crim. App.
1999). We do not apply the first two factors in this case because the statement was
not one by which appellant sought to escape culpability, but one on which the State
relied. See Woods, 152 S.W.3d at 113 ("The first two factors . . . logically apply only
when the defendant is the proponent of the statement against interest that tends to
exculpate the defendant."). 

 Like this case, Woods was an appeal from a conviction for the murder of two
individuals. Id., 152 S.W.3d at 108. The defendant argued on appeal that statements
made by his codefendant to two acquaintances were not admissible as statements
against interest under rule 803(24). The Court of Criminal Appeals held that the trial
court had properly allowed both witnesses to testify because sufficient corroborating
circumstances indicated their trustworthiness. Id. at 113-14. 

 Appellant's question to Sheppard, in which he asked "how [she] would feel
towards him if the police said that he had killed the two ladies," satisfies the first
inquiry under rule 803(24). Though hypothetical, the question was self-inculpatory
and against appellant's self-interest. In addition, the record presents several
corroborating circumstances that indicate the trustworthiness of appellant's
statement to Sheppard. Appellant was a friend of Sheppard's son and a frequent
visitor in the Sheppard home. He called Sheppard "mom"; Sheppard had known him
for about four years; and their relationship was "close." The circumstances of the
relationship between appellant and Sheppard tend to corroborate the trustworthiness
of the statement contained in appellant's question to her. 

 At trial, Sheppard testified that she had observed police helicopters overhead
on the early afternoon of the murders and had gone to appellant's nearby apartment
complex with several neighbors to investigate what had happened. While there, she
saw appellant drive up with his sisters and his girlfriend. Sheppard spoke with
appellant, who seemed to be acting "strange" and kept rubbing his head. Sheppard
saw appellant again later that day. He arrived at the Sheppard home that evening at
about 7 p.m. Appellant had not yet been charged, but spontaneously posed to
Sheppard the question whose admissibility he challenges here. In addition to asking
Sheppard how she would feel about him if police told her that he had killed the two
ladies, appellant also told Sheppard that he "thought the police might be looking for
him." Appellant's question to Sheppard here is much like the "street corner"
statements in Woods, as to both spontaneity and close proximity to the murder of the
women. See id. at 113. 

 Independent corroborative facts also indicate the trustworthiness of the
statement contained in appellant's question to Sheppard. Appellant had pointed out
a car to two acquaintances and stated that he had stolen it from his neighbor. 
Appellant then told one of those acquaintances that he had stabbed both his neighbor
and another person. Appellant had thus confided in another person besides
Sheppard. Later that day, police located the Maloneys' car where appellant had left
it. Police obtained both DNA evidence from the car and scent that police
bloodhounds tracked to the Maloney apartment and then to appellant's apartment
next door. On the day after the murders, appellant led police detectives to the
discarded keys to the Maloney car. These independent corroborative facts further
reinforce the trustworthiness of the statement against interest within appellant's
question to Sheppard. 

 Having thus concluded that appellant's question to Sheppard was properly
admissible because it contained a statement against appellant's penal interest, we
address appellant's contention that the statement violated his right to confront and
cross-examine witnesses, as guaranteed by the Sixth Amendment. We may infer that
appellant's statement is reliable without offending the Sixth Amendment because the
statement falls within rule 803(24)'s well-established exception to the hearsay rule
for statements against interest. See Tex. R. Evid. 803(24). In addition, the statement
was not testimonial in nature, but, rather, in the nature of a casual remark
spontaneously made to an acquaintance. See Woods, 152 S.W.3d at 114. As a
nontestimonial remark, appellant's statement did not implicate Sixth Amendment
protections. See id., 152 S.W.3d at 113-14. 

 Accordingly, we hold that the trial court did not abuse its discretion by
permitting Sheppard to testify regarding appellant's question to her. 

 We overrule appellant's first point of error. 

Smith's Testimony Regarding Dog's Behavior


 In his second and third points of error, appellant contends that the trial court
erred by admitting Smith's testimony in which he described his dog's behavior. 
Appellant contends that the testimony was irrelevant and violated Rule of Evidence
403. 

 To preserve error for review, an adverse ruling must follow a timely and
specific objection. See TEX. R. APP. P. 33.1(a). To be timely, an objection must be
raised at the earliest opportunity or as soon as the ground of objection becomes
apparent. Martinez v. State, 867 S.W.2d 30, 35 (Tex. Crim. App. 1993). Appellant's
neighbor Smith testified that his dog "was acting a little nervous . . . that day." There
was no objection to that statement. The prosecutor later asked Smith, "What was
different about Becker that morning? You said that he went crazy. Explain to us
what happened." At that point, appellant's trial attorney objected on grounds of
relevancy. (1) There was never a rule 403 objection to the statements about the dog's
behavior. We hold that appellant's relevancy objection came too late, and that he did
not preserve his rule 403 objection. 

 We overrule appellant's second and third issues.


Conclusion We affirm the judgment of the trial court.



 Sherry Radack

 Chief Justice

 

Panel consists of Chief Justice Radack and Justices Higley and Nuchia. (2)


Do not publish. Tex. R. App. P. 47.2(b).
1. The trial court allowed Smith to testify about his dog's behavior "strictly for time
frame purposes . . . ." 
2. Justice Sam Nuchia, who retired from the First Court of Appeals on January 1, 2009,
continues to sit by assignment for the disposition of this case, which was submitted
on December 9, 2008.