*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# MEMORANDUM OPINION

No. 04-08-00836-CR

Ian William **VANBUREN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-2746
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Karen Angelini, Justice
                Steven C. Hilbig, Justice, concurring in the judgment
                Marialyn Barnard, Justice

Delivered and Filed: February 3, 2010

AFFIRMED

A jury found Ian William Vanburen guilty of murder and, after making an affirmative finding that Vanburen acted under the immediate influence of sudden passion arising from an adequate cause, assessed punishment at thirteen years imprisonment and a $10,000.00 fine. In two issues, Vanburen contends the evidence was legally and factually insufficient to support the jury's implicit rejection of his self-defense claim. We affirm the trial court's judgment.

## BACKGROUND

During the early morning hours of October 31, 2006, Vanburen shot and killed Jeremy Lathem. On the night of the murder, Vanburen and Andrew Garza had been drinking at a sports bar, and left at approximately 2:00 a.m. After leaving the sports bar, Vanburen called Janice Gonzales, whom he had met a few weeks earlier. He asked her if he could join her at Lathem's house, where Lathem's birthday party was occurring, and she agreed. Although Gonzales and Lathem were close friends, Vanburen had never met Lathem. Vanburen and Garza arrived at the party at approximately 3:30 a.m., but Garza decided to stay in the truck because he felt ill. Vanburen went inside. Inside the house, Lathem, Gonzales, and two other men, Joe Isaac and David Fernandez, were playing poker and drinking.[1] Vanburen sat at the table with the poker players, but did not play. At some point, Garza came inside. He saw the group playing cards, and saw Vanburen seated at the poker table. After a while, an argument erupted between Gonzales and Vanburen, ending with Vanburen pouring a cup of beer on Gonzales. Gonzales and Vanburen went outside and continued arguing.

At this point, the testimony of the eyewitnesses begins to conflict. However, the undisputed evidence shows that after Vanburen and Garza got into Vanburen's truck, Lathem walked up to the truck and hit the taillight with a small bat. Vanburen testified he looked back and saw "somebody with a weapon that just smashed my car." According to Vanburen, Lathem was approaching the driver's side door with the bat. Vanburen felt like he was being attacked, and when Lathem was in front of his window, he reached for his gun and shot in Lathem's direction three times. Vanburen

---

[1] Although there was testimony that Lathem was drinking, autopsy results showed no drugs or alcohol in his system.

then drove off and was pulled over by law enforcement officers as he was taking Garza home. The officers immediately took Vanburen in for questioning regarding Lathem's murder.

Vanburen was charged by indictment with the offense of murder. At trial, the jury heard testimony from five eyewitnesses to the shooting, including Vanburen, who claimed he shot Lathem in self-defense. The jury found Vanburen guilty of murder, implicitly rejecting his self-defense claim.

## DISCUSSION

In two points of error, Vanburen contends the evidence is legally and factually insufficient to support the jury's implicit rejection of his self-defense claim. According to Vanburen, his testimony that Lathem was a huge man, who bashed his taillight with a bat and verbally threatened him, supports his claim of self-defense because a reasonable person would have been afraid for his life. As a result, no rational trier of fact could have found he did not act in self-defense, and the State's evidence is too weak and goes against the great weight and preponderance of the evidence to support the jury's rejection of his self-defense claim.

Texas law categorizes self-defense as a defense, not an affirmative defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). To support a defense like self-defense, a defendant bears only a burden of production, which requires him to produce some evidence in support of his claim. *Id*.; *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Once the defendant produces such evidence, the burden shifts to the State, and the State bears the burden of persuasion to disprove the raised defense. *Id*. Unlike the defendant's burden of production, the State's burden of persuasion requires it to prove its case beyond a reasonable doubt. *Id*. When a fact finder

determines that a defendant is guilty, there is an implicit finding rejecting any defensive theory raised by the defendant. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914.

When a defendant challenges the legal sufficiency of the evidence supporting a jury's implicit rejection of a defendant's claim of self-defense, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914. When a defendant challenges the factual sufficiency of the evidence supporting a jury's implicit rejection of a defendant's claim of self-defense, we review all the evidence in a neutral light and ask "whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence." *Zuliani*, 97 S.W.3d at 595 (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).

A person is legally justified in using force against another person when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (Vernon Supp. 2009).[2] A person is legally justified in using deadly force against another person when and to the degree: (1) he would have been justified in using force as set out in section 9.31 of the Texas Penal Code, (2) a reasonable person in his position would not have retreated, and (3) he reasonably believed the use of deadly

---

[2] We recognize section 9.31 has been amended since the commission of the offense in this case. *See* Act of April 28, 1995, 74th Leg., R.S. ch. 190, 1995 Tex. Gen. Laws 1919, 1919, *amended by* Act of March 20, 2007, 80th Leg., R.S. ch. 1, § 6, 2007 Tex. Gen Laws 1, 2 (current version at TEX. PENAL CODE ANN. § 9.31 (Vernon Supp. 2009)). However, the amendment did not change the portion of 9.31(a) cited in this opinion. *See id.* Accordingly, we cite to the current version of the statute with regard to this portion of section 9.31(a).

force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force. Act of May 29, 1993, 73rd Leg., R.S. ch 900, §1.01, 1993 Tex. Gen. Laws 3586, 3598, *amended by*, Act of March 20, 2007, 80th Leg., R.S. ch. 1, § 3, 2007 Tex. Gen. Laws 1, 2 (current version at TEX. PENAL CODE ANN. § 9.32 (Vernon Supp. 2009)).[3] "'Deadly force' is force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." TEX. PENAL CODE ANN. § 9.01(3) (Vernon Supp. 2009).

In this case, the jury was instructed to acquit Vanburen if the jury found, or had a reasonable doubt, that Vanburen was justified in using deadly force. The language of the jury instructions tracked the language from the self defense statute in effect at the time of the offense, and the language regarding the use of deadly force to protect oneself.

The jury heard testimony from five eyewitnesses to the shooting. Garza testified that after Vanburen threw a cup of beer on Gonzales, he heard Gonzales tell Lathem "to fuck 'em up." Garza and Vanburen were already outside when Garza heard Gonzales make this statement. Garza testified that as he and Vanburen walked toward Vanburen's truck, Gonzales and Vanburen continued yelling profanities at one another. Garza testified that when he got into the truck, he saw Lathem come outside with a bat. Garza then turned around and saw Lathem break the truck's back windshield,

---

[3] Section 9.32 was amended effective September 1, 2007. Act of March 20, 2007, 80th Leg., R.S. ch. 1, § 6, 2007 Tex. Gen Laws 1, 2 (current version at TEX. PENAL CODE ANN. § 9.32 (Vernon Supp. 2009)). For offenses committed after September 1, 2007, the justification to support self-defense no longer requires a finding that a reasonable person would have retreated. *See id.* § 3. However, the offense in this case was committed on October 31, 2006, before the effective date of the current version of section 9.32. When the statute was amended, it specifically provided that the amended version would apply only to offenses committed on or after the statues effective date; the former law would remain in effect and apply to offenses committed before the effective date of the amended statute. *Id.* § 5. Accordingly, we apply and cite to the version of section 9.32 that was in effect at the time of the offense, and that version of the statute requires a finding that a reasonable person would have retreated. *See* Act of May 29, 1993, 73rd Leg., R.S. ch. 900, §1.01, 1993 Tex. Gen. Laws 3586, 3598, *amended by*, Act of March 20, 2007, 80th Leg., R.S. ch. 1, § 3, 2007 Tex. Gen Laws 1, 2 (current version at TEX. PENAL CODE ANN. § 9.32 (Vernon Supp. 2009)).

though he later admitted it could have been the taillight. Garza testified Vanburen ducked down as Lathem approached the front of the truck with the bat raised. According to Garza, Vanburen retrieved a gun from beneath the driver's seat, put the magazine into the gun, and shot it three times. Garza testified he did not see Vanburen shoot Lathem, but believed Vanburen shot the gun into the air to scare Lathem. Garza later testified he told police officers Lathem was not facing the truck when Vanburen shot at him. Garza stated Vanburen put the truck into reverse and hit another vehicle; however, Garza admitted he told police Vanburen put the truck in reverse to try and hit Lathem before Vanburen shot him.

Gonzales testified that when Vanburen arrived at Lathem's house, he appeared drunk. She stated Vanburen became agitated, and after becoming upset with her, poured a cup of beer over her head. Gonzales testified she became upset and began yelling at Vanburen, telling him to leave. Lathem and Vanburen began exchanging words, and Lathem told Vanburen to leave. She walked outside and Vanburen followed her, and they continued cursing at one another in Lathem's driveway. According to Gonzales, she began walking toward the neighbor's yard and both Vanburen and Lathem followed her. Lathem asked her if she needed any help, and she said "yes." Gonzales then testified she called Vanburen crazy, and Vanburen replied, "We'll see who's crazier." Gonzales said that when Vanburen got into his truck, she went behind it to record his license plate information. At that point, Vanburen shifted the truck into reverse and revved the engine. Isaac, who was outside by this time, pulled Gonzalez away from the truck, and she saw Lathem walking toward the back of the truck with a bat. Lathem smashed the taillight of Vanburen's truck. Gonzales testified she turned back toward the house and heard shouting, a loud noise that sounded like metal on metal, and the truck's tires squealing. She was pushed to the ground, and when she looked up, she saw Lathem

stumbling toward the neighbor's porch, where he collapsed. Gonzales testified she never heard any gun shots.

Isaac testified that after the poker game ended, he and Fernandez went upstairs to bed. Minutes later, someone called for Fernandez, and Fernandez ran downstairs. Isaac testified Fernandez called him, and he too went downstairs. Isaac and Fernandez were standing in the front doorway watching Gonzales and Vanburen yelling at one another. Isaac testified he went to get Gonzales when he saw Vanburen and Garza get into Vanburen's truck. He also recalled the sound of the engine starting because it was loud, and while the truck was running, he noticed the rear lights were on and brighter than normal. Isaac testified he pulled Gonzales away from the curb, and he saw Lathem walking toward Vanburen's truck with "a small souvenir bat." Isaac testified he told Lathem "not to do it" and "it wasn't worth it," but Lathem hit the taillight on Vanburen's truck. After that, Lathem backed up toward the neighbor's driveway. Isaac testified Lathem was ten to twelve feet away from the driver's side back door and was holding the bat at waist level when Vanburen shot him. This testimony is supported by the medical examiner's testimony that because no soot or gunpowder was on Lathem's clothes, Lathem was not shot at close range. Isaac testified that after he heard four shots, he panicked and ran.

Similarly, Fernandez testified that after he called Isaac downstairs, he and Isaac stood in the front doorway and saw Gonzales and Vanburen arguing. Fernandez testified Isaac went to get Gonzales, and around the same time, Lathem came out of the house, carrying "a small wooden bat." Fernandez testified Lathem walked toward Vanburen's truck, but Fernandez focused on Isaac and Gonzales, who were walking toward the curb. Fernandez then heard something breaking and saw the taillight of Vanburen's truck was broken. He then turned toward Gonzales and heard three

gunshots, tires squealing, and saw Vanburen's truck back up into a parked vehicle. Fernandez testified he did not see Vanburen shoot Lathem.

Vanburen agreed he got into an argument with Gonzales and poured a cup of beer on her head. He said Gonzales then went outside, and he decided to leave. Vanburen testified he heard someone say, "fuck 'em up." Although he believed the statement came from Gonzales, Vanburen testified he was unsure to whom she made the statement, but he was scared and wanted to leave. Vanburen testified he and Garza continued moving toward his truck, and when he was in the truck, he heard a banging sound on the back of his truck. Vanburen testified that as he was seated in the truck, he looked back and saw "somebody with a weapon that just smashed my car." At that point, he reached for the gun underneath his seat, pulled the slide back, loaded a round into the chamber three times, and shot in Lathem's direction. Contrary to the testimony of several other witnesses, Vanburen testified he started the truck after he fired the gun. He claimed he mistakenly put his truck into reverse and backed into another vehicle. When he shifted into drive and drove away, he got lost in the neighborhood and could not recall whether he drove by Lathem's house again.

Chief Medical Examiner for Bexar County, Dr. Randy Frost, testified Lathem was shot three times, two of the gunshots were on his left arm and the third gunshot was to his chest. The wounds to Lathem's arm were not fatal. However, the bullet that caused the wound to his chest pierced the left side of Lathem's chest, passed through a rib, and went through his left lung and heart. As a result of the chest wound, Lathem died. Frost also testified no soot or gunpowder was on Lathem's clothing or body, indicating he was not shot at close range. A toxicology test showed no drugs or alcohol in Lathem's system.

Although Vanburen argues no rational juror could have found he did not act in self-defense, we disagree. The evidence shows conflicting accounts of the events. Although Vanburen testified he fired the gun three times *before* starting the truck's ignition, two eyewitnesses, Isaac and Gonzales, testified they were certain Vanburen started the truck before he shot Lathem. Gonzales testified Vanburen shifted gears and revved the truck's engine before Lathem approached the truck with the bat. Isaac testified he remembered Vanburen started the truck because it was loud and the lights were brighter than normal. Additionally, Lathem's position with regard to the truck was in dispute. Isaac testified he thought Lathem was walking away from the truck toward the neighbor's yard when the shots were fired. Garza, on the other hand, testified Lathem was approaching the front of the truck with the bat raised at the time Vanburen fired. Garza also testified it would have taken Vanburen less time to start the truck and drive away than the time it took for Vanburen to prepare to fire his gun. Garza added he would have handled the situation differently. Accordingly, there is evidence from which the jury could conclude a reasonable person would have retreated and deadly force was not immediately necessary to protect himself because he could have simply driven away. *See* Tex. Penal Code Ann. § 9.31(a); Act of May 29, 1993, 73rd Leg., R.S. ch 900, §1.01, 1993 Tex. Gen. Laws 3586, 3598, *amended by*, Act of March 20, 2007, 80th Leg., R.S. ch. 1, § 3, 2007 Tex. Gen. Laws 1, 2 (current version at Tex. Penal Code Ann. § 9.32 (Vernon Supp. 2009)).

Vanburen contends he did not have time to retreat by driving away, and Lathem was approaching him with a deadly weapon; however, his testimony is conflicting. On the one hand, Vanburen testified he did not have time to drive away, but on the other hand, he described the time it took him to locate his handgun underneath his seat, check the magazine, rack the slide, load a round into the chamber, and hold the handgun out the window to fire three shots in Lathem's

direction. Additionally, the evidence shows that although Vanburen told law enforcement officers Lathem had a bat, during trial, Vanburen testified he did not see the weapon or know what the weapon was, but it "could have been anything the size of a bat." Vanburen went on to testify he did not know what Lathem had, but he was sure Lathem had "an object in his hand." When asked to explain where Lathem was in proximity to himself, Vanburen at one point testified Lathem was approaching the driver's door; however, Vanburen also testified he did not exactly see where Lathem was when he fired the weapon. There was evidence Lathem was ten to twelve feet away from Vanburen when he fired. He went on to testify he fired the gun in Lathem's direction.

After viewing all the evidence in the light most favorable to the prosecution, we conclude any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt and the same rational trier of fact could have found against Vanburen on the self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Furthermore, after giving due deference to the jury's assessment of the witnesses' credibility and resolution of evidentiary conflicts, we cannot conclude the State's evidence taken alone is too weak to support the finding or that the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *See Zuliani*, 97 S.W.3d at 595. Accordingly, we conclude the evidence is legally and factually sufficient to support Vanburen's conviction, and we overrule his two points of error.

## CONCLUSION

Because we conclude the evidence is legally and factually sufficient, we affirm the trial court's judgment.

Marialyn Barnard, Justice

DO NOT PUBLISH