**Gerald ZULIANI, Appellant,**

v.

**The STATE of Texas.**

**No. 1168–01.**

Court of Criminal Appeals of Texas.

Feb. 5, 2003.

Ray Bass, Austin, for appellant.

Ken Oden, County Attorney, Matthew Paul, State's Attorney, Austin, for state.

PRICE, J., delivered the unanimous opinion of the Court.

In this case, we determine whether the Court of Appeals applied the proper factu-

al sufficiency standard concerning the jury's rejection of self-defense, and whether a statement made twenty hours after an altercation, made in response to a question, and made after the declarant appeared to be thinking about her answer was an excited utterance. We believe that the hearsay statement is an excited utterance but, because the Court of Appeals did not apply the correct factual sufficiency standard, we will reverse.[1]

### FACTS

On February 2, 1999, the appellant and Patti Dwinell had an argument that escalated into a physical confrontation. The appellant pushed Dwinell backwards, which caused her to fall, hit her head on a bookcase and cut her scalp. It is this conduct that eventually led to the appellant's conviction for assault. The events preceding the injury, however, are in dispute because Dwinell has told two different versions of what happened that night.

Dwinell's first version was told to her sister, Judy Tobey. Tobey, her husband, and the police went to the appellant's and Dwinell's home on February 3, 1999. Tobey received a call from Dwinell's employer that Dwinell had not come into work. Tobey was unable to contact Dwinell, but Tobey's husband eventually reached Dwinell on the telephone. Dwinell's responses on the telephone were disjointed and she whispered, "help me, help me, help me." The Tobeys called the police and then went to Dwinell's residence.

When the police arrived at the residence, the appellant said that Dwinell was sick, taking medication, and needed rest.[2] The officer said that he needed to make sure that everyone was all right, and Dwinell came out of the bedroom. Dwinell appeared meek, withdrawn, and fearful, and the cut on her head was visible. She whispered, "help me" to the officer, but she refused to tell the officer what had happened. Tobey and her husband then arrived.

At the request of the officer, Tobey took Dwinell into a separate room to try to find out what had happened. According to Tobey, Dwinell was reluctant to say what had happened. Tobey described Dwinell as despondent and like a scared little girl. Tobey could sense that Dwinell wanted to tell, so she took Dwinell's hands, looked her in the eye, and asked what had happened. After a few seconds, Dwinell eventually told Tobey that she and the appellant had been fighting, that the appellant had restrained her, that she pushed the appellant down, and that the appellant got back up and pushed her down, causing the cut on her scalp.[3]

Dwinell told her second version at trial. Dwinell was called by the State, but invoked her Fifth Amendment privilege against self-incrimination and refused to testify. After testimonial immunity was granted, Dwinell said that she and the appellant had been arguing about her daughter. The appellant took a cigarette out of her mouth and reminded her that as

1. The actual grounds for review read:
(1) In resolving petitioner's claim that the evidence presented at trial is factually insufficient to establish beyond a reasonable doubt that he did not act in self-defense, the Court of Appeals applied incorrect standards of review.
(2) The Court of Appeals erred in holding that the trial court did not abuse its discretion by admitting into evidence at trial, under the exited utterance exception to the hearsay rule, Judy Tobey's testimony about Patti Dwinell's statements to her on February 3, 1999.

2. Dwinell had recently had her thyroid surgically removed because of cancer.

3. Dwinell gave a written statement to the same effect to the police.

part of her recovery from thyroid surgery, she was not to smoke. Dwinell became angry, insults were exchanged, and Dwinell slapped the appellant. The appellant put Dwinell in a bear hug and made her promise to stop hitting him. When the appellant released Dwinell, Dwinell pushed him down. As he began to get back up, Dwinell swung at the appellant. The appellant put his arm out and pushed Dwinell away, which caused Dwinell to fall and cut her head. After hearing this conflicting testimony, the jury found appellant guilty of assault.

On appeal, the appellant argued *inter alia* that the finding that the appellant did not act in self-defense is factually insufficient, and that the trial court erred in allowing Tobey to repeat the Dwinell's hearsay statements. *Zuliani v. State,* 52 S.W.3d 825 (Tex.App.-Austin, 2001). The Court of Appeals held that the rejection of the appellant's self-defense issue was not against the great weight and preponderance of the evidence. *Id.* at 833. The Court of Appeals also held that, even though what Dwinell told Tobey was in response to a question and twenty hours after the fight, the trial court could have found Dwinell's statement was an excited utterance. *Id.* at 828. In this Court, the appellant argues that the Court of Appeals incorrectly analyzed the factual sufficiency issue and erred by holding Dwinell's statement to Tobey was an excited utterance. We agree with the appellant that the Court of Appeals incorrectly analyzed the factual sufficiency issue and will reverse.

### A. Factual Sufficiency

■ The Texas Constitution vests the courts of appeals with the ability to conclusively review questions of fact brought before them. TEX. CONST. art. V, § 6; *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App. 1997). Although we may not do our own factual sufficiency review,[4] this Court has jurisdiction to determine whether the courts of appeals have applied the correct standard of review and the correct rule of law concerning the factual sufficiency of the evidence. *Ibid.*

■ Evidence can be factually insufficient in one of two ways: (1) the evidence is so weak as to be clearly wrong or manifestly unjust, or (2) the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). These standards encompass the complete civil appellate law formulation for factual insufficiency. *Ibid.*

■ Which standard applies generally depends on whether the complaining party had the burden of proof at trial. *Id.* at 9–10. If the complaining party did not have the burden of proof at trial, then the first or manifestly unjust standard applies. *Id.* at 10. If the complaining party on appeal had the burden of proof at trial, then the second or against the great weight and preponderance standard applies. *Ibid.*

■ We have, however, slightly modified this approach when a defendant challenges the factual sufficiency of a guilt finding. If the defendant challenges the factual sufficiency of the elements of the offense on appeal, even though the State has the burden of proof, the reviewing court must review the evidence using both standards. *Id.* at 11; *see also Goodman v. State,* 66 S.W.3d 283, 285 (Tex.Crim.App. 2001). In other words, the reviewing court

4. Of course, we may conduct a factual sufficiency review on a direct appeal from a capital murder case where the sentence imposed is death. *Bigby v. State,* 892 S.W.2d 864, 875 (Tex.Crim.App.1994).

asks whether "a neutral review of all the evidence ... demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson*, 23 S.W.3d at 11.

In the context of a rejected affirmative defense on a defendant's appeal, the reviewing court uses the second standard and determines whether the finding against the affirmative defense was so against the great weight and preponderance of the evidence as to be clearly wrong. *See id.* at 10. However, in this case, we are dealing with self-defense, which is classified as a defense, as opposed to an affirmative defense. With a defense, the burdens at trial alternate between the defense and the State.

In *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991), we explained the burdens involved in a defense under Penal Code section 2.03 and the proper analysis under a legal sufficiency challenge. We said a defendant bears the burden of production, which requires the production of some evidence that supports the particular defense. *Id.* at 913. Once the defendant produces such evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id.* at 913–14. The burden of persuasion is not one that requires the production of evidence, rather it requires only that the State prove its case beyond a reasonable doubt. *Id.* at 913. When a jury finds the defendant guilty,

there is an implicit finding against the defensive theory. *Id.* at 914.

We have not discussed the proper standard of review in light of *Johnson*[5] when analyzing a defense. Lower courts of appeals have reviewed such challenges under *Clewis v. State*, 922 S.W.2d 126 (1996), which expressly enunciated the "against the great weight and preponderance" standard of review.[6] *E.g.*, *Shaw v. State*, 995 S.W.2d 867, 868 (Tex.App.-Waco 1999, no pet.) (applying *Clewis* standard to self-defense review); *Reaves v. State*, 970 S.W.2d 111, 116 (Tex.App.-Dallas 1998, no pet.) (same).

Before *Johnson* clarified *Clewis*, the Dallas Court of Appeals combined the standards in *Clewis* and *Saxton* to formulate a factual sufficiency standard involving the rejection of a defense. *Reaves*, 970 S.W.2d at 115–16. Under *Reaves*, in determining a challenge to the sufficiency of the evidence to support the jury's finding, beyond a reasonable doubt, against a defendant's self-defense issues, the court considered all of the evidence in the record probative of the defendant's guilt. Also, the court considered all of the evidence in the record probative of defendant's self-defense issues and decided if the finding of guilt, beyond a reasonable doubt, and the implied finding against the self-defense issues, beyond a reasonable doubt, are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 116. We agree with this approach, but we must modify it in light of *Johnson*.

---

5. A defendant bears the full burden of proof on an affirmative defense under Penal Code section 2.04. *Madrid v. State*, 595 S.W.2d 106, 110–11 (Tex.Crim.App. [Panel Op.] 1979). But, a defendant bears the burden of production and the State bears the burden of persuasion on a defense under Penal Code section 2.03. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex.Crim.App.1991).

6. In *Johnson*, we clarified that *Clewis* is to be read as adopting the complete civil formulation for factual insufficiency. *Johnson*, 23 S.W.3d at 11.

As explained above, the State has the ultimate burden of persuasion when confronted with a section 2.03 defense. *Saxton v. State,* 804 S.W.2d 910, 913–14 (Tex. Crim.App.1991). The State's burden is proving its case beyond a reasonable doubt. *Id.* at 913. Therefore, we hold that when a defendant challenges the factual sufficiency of the rejection of a defense, the reviewing court reviews all of the evidence in a neutral light and asks whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim. App.2000).

The court of appeals, in this case, analyzed the evidence using only the second prong of *Johnson.* Thus, this case is remanded to the court of appeals to apply the full factual sufficiency standard as stated above.

### *B. Hearsay*

■ The appellant argues in his second ground for review that Judy Tobey's testimony about what Dwinell had told her was inadmissible hearsay. The State responds that the testimony indicates that Dwinell was still under stress when she made the statements, and that the trial court properly admitted the testimony as an excited utterance. We conclude that the trial court did not abuse its discretion in admitting Tobey's statements.

■ The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion. *Lawton v. State,* 913 S.W.2d 542, 553 (Tex.Crim.App. 1995). Therefore, a reviewing court should not reverse unless a clear abuse of discretion is shown. *See Coffin v. State,* 885 S.W.2d 140, 149 (Tex.Crim.App.1994).

An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State,* 842 S.W.2d 667, 682 (Tex. Crim.App.1992).

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex.R. Evid. 801(d). In order for hearsay to be admissible, it must fit into an exception provided by a statute or the Rules of Evidence. Tex.R. Evid. 802. One such exception is Rule 803(2), the excited utterance exception.

■ An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex.R. Evid. 803(2); *Salazar v. State,* 38 S.W.3d 141, 154 (Tex.Crim.App.2001). The basis for the excited utterance exception is "a psychological one, namely, the fact that when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for *reflection* necessary to the fabrication of a falsehood and the 'truth will come out.'" *Evans v. State,* 480 S.W.2d 387, 389 (Tex.Crim.App.1972) (emphasis added). In other words, the statement is trustworthy because it represents an event speaking through the person rather than the person speaking about the event. *Ibid.; Ricondo v. State,* 475 S.W.2d 793, 796 (Tex.Crim.App.1971).

■ In determining whether a hearsay statement is admissible as an excited utterance, the court may consider the time elapsed and whether the statement was in response to a question. *Salazar,* 38 S.W.3d at 154; *Ward v. State,* 657 S.W.2d 133, 135–36 (Tex.Crim.App. [Panel Op.] 1983); *Fisk v. State,* 432 S.W.2d 912, 914–

15 (Tex.Crim.App.1968). However, it is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception. *See Lawton v. State,* 913 S.W.2d 542, 553 (Tex.Crim.App. 1995); *Penry v. State,* 903 S.W.2d 715, 750–51 (Tex.Crim.App.1995); *McFarland v. State,* 845 S.W.2d 824, 846 (Tex.Crim. App.1992).

The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. *McFarland,* 845 S.W.2d at 846. Stated differently, a reviewing court must determine whether the statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Fowler v. State,* 379 S.W.2d 345, 347 (Tex.Crim.App.1964).

Here, the evidence at the time of the ruling showed that Dwinell had spoken with Tobey's husband, and that the conversation was irregular with Dwinell whispering, "help me, help me, help me." When Tobey arrived, the police were already present. Dwinell was in a robe, wore no make up, and her hair was not done. Dwinell was described as withdrawn, with her head down "like a two-year old," "scared to death," or "real scared," and tired. Dwinell had not told the police what had happened and was reluctant to speak with them. It was only after Tobey grabbed hold of Dwinell's hand while alone, looked her in the eye, and asked what had happened that Dwinell answered.

Dwinell first responded that she could not tell, then said that the appellant would get in trouble and then come back and get her. After a pause, Dwinell started to cry and then gave her version of what had happened. Dwinell was described as being scared at this time. The testimony also indicated that at least twenty hours had elapsed from the time of the altercation to Dwinell's statement.

Clearly, here, a startling event had occurred. The Court of Appeals noted that, although the time frame between the event and the statement was twenty hours, Dwinell had not been separated from the appellant since the incident. Dwinell's scalp injury, diagnosed as needing stitches, had not been treated and Dwinell stated that if the appellant were jailed, she feared what he would do when released.

The fact that some of the declarant's statements were in the form of responses to questions does not make them inadmissible under this exception to the hearsay rule. Declarations made either in response to questioning or after some time had elapsed are only two factors in determining whether a statement is an excited utterance. *Lawton v. State,* 913 S.W.2d 542, 553 (Tex.Crim.App.1995). Neither factor alone is dispositive. *Ibid.* The key is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *Ibid.*

Because the record supports the trial court's ruling that the statement was admissible as an excited utterance, we cannot say that it abused its discretion in so finding. We overrule the second ground for review.

### CONCLUSION

The Court of Appeals accurately held that Dwinell's hearsay statement was an excited utterance, but it applied an incorrect factual sufficiency standard. Accordingly, the Court of Appeals's judgment is reversed, and this case is remanded to that

Court to apply the correct factual sufficiency standard.