In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00103-CR

                                                ______________________________

 

 

                            DALTON RAY MOREHEAD, JR.,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                              Delta County, Texas

                                                             Trial
Court No. 6765

 

                                                             
                                     

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                     MEMORANDUM 
OPINION

 

            A
fight between Dalton Ray Morehead, Jr., and Brandon McClanahan, possibly
involving some other individuals, at Morehead’s residence in Cooper, Texas, in
2006, resulted in McClanahan suffering several serious knife wounds.  Morehead was later convicted by a Delta
County jury for aggravated assault with a deadly weapon[1] and
sentenced by the trial court to eleven years’ imprisonment and a $5,000.00
fine.  On appeal, Morehead claims error
in a lack of full discovery and asserts that the evidence[2] was
insufficient to prove aggravated assault and insufficient to allow rejection of
his defense of self-defense.  We affirm
the trial court’s judgment, because (1) Morehead’s discovery complaint was not
preserved for review, (2) sufficient evidence established Morehead’s aggravated
assault, and (3) sufficient evidence supports the jury’s rejection of
self-defense.

(1)        Morehead’s Discovery
Complaint Was Not Preserved for Review

            Morehead’s
appellate brief claims to include in an appendix a copy of a motion seeking
discovery, ostensibly filed with the trial court.  But Morehead’s appendix contains no such motion.  Our correspondence file indicates Morehead
filed a pro se “Motion for Production” with this Court in December 2010, four
years after the date of his conviction. 
We overruled Morehead’s pro se motion. 
Our review of the clerk’s record indicates that no motion for discovery
was filed with the trial court.

            As
a prerequisite to presenting a complaint for our review, Morehead must have
presented his complaint to the trial court by a timely request or motion, which
was ruled on by the trial court expressly or implicitly, or on which it refused
to rule despite complaint.  Tex. R. App. P. 33.1(a)(1).  Because no motion for discovery was presented
to the trial court, Morehead cannot complain of any action or inaction taken by
the trial court with regard to this matter. 
His unpreserved point of error presents nothing for review and is
overruled.

(2)        Sufficient Evidence
Established Morehead’s Aggravated Assault 

            From the witnesses
at trial, several versions of the events that led to Morehead’s conviction emerged.  A number of facts are undisputed.  Morehead argued with his wife on the day of
the incident, and left his home.  While
angry, he returned to his home at nighttime brandishing a “dowel rod” that was
made of “[w]ood, but it also had nails in each end of it.”  During this time, present at the Morehead
residence were Morehead’s wife, Christine Morehead; his niece, Angie Sharpton;
Christine’s friend, McClanahan; and an acquaintance, James Carson.  Sharpton tried to prevent Morehead’s entry
into the residence, and the two struggled with the dowel rod, which eventually
landed on the floor.  Next, McClanahan
and Morehead engaged in a fight. 
McClanahan “got [Morehead] in a headlock and started swinging.”  It is also undisputed that Morehead had a
pocketknife in his hand, that McClanahan did not have a weapon,[3]
and that McClanahan sustained serious injuries requiring hospitalization and
surgery resulting from several knife wounds to the face, ears, neck, arm, back,
and abdomen.  As soon as McClanahan
“looked down, and there was blood running out,” and “my gut was hanging out,”
he “put [his] hand over it” and “hollered at [Carson] to take [him] to the
hospital.”  McClanahan and Carson left
for the hospital, and Sharpton ran across the street and asked the neighbors to
call 9-1-1, leaving Morehead and Christine alone in the residence.  Christine exited the house by jumping out of
a glass window.  

            Although
each witness at trial confirmed the facts stated above, each cast a different
light on the incident.  For context, we
describe the nature of Morehead’s relationship with his wife.  Morehead was married to Christine for ten
years.  The two were having marital
problems and had considered divorce. 
Morehead was reportedly abusive to his wife, had said that he would hold
her down and break her ribs, and had previously threatened to kill her.  Christine was scared of Morehead; and her
family, including Sharpton, was aware of the volatile relationship.  This background was before the jury as each
witness testified.

            The
jury first heard Sharpton’s perspective on the events.  She testified Morehead was yelling angrily
when he returned to the home with “a stick in his hand.”  Sharpton announced Morehead’s presence to the
others in the home.  Morehead told
Sharpton to get out of the way when she prevented him from further entering the
home.  Sharpton “pull[ed] the stick out
of his hand and told him [she] wasn’t going to move.”  This prompted Morehead to hit her in the
face, which she testified “kind of force[d] me out of the way for him to get
by.”  Sharpton added,

I see [McClanahan] coming, and [Morehead] grabs
him, and he’s hitting him in the face, what it looks like to me.  And I see [Morehead’s] arms, you know,
hitting back.  And then pretty quickly
they came apart. Well, that’s when I noticed [McClanahan] was bleeding . . . . And
that’s when I looked over at [Morehead], and I seen the front of the blade.

 

Sharpton ran to the neighbor’s
home and asked them to dial 9-1-1.  She
went back to the Morehead home, climbed into a car, and noticed “Christine to where
it looks like she’s jumped out the bedroom window and she’s coming toward the
car.”  Sharpton said she saw Morehead in
the garage placing what looked like a gun in the trunk of his car.  

            McClanahan
testified that he was in the Morehead house doing drugs when he witnessed the
confrontation between Morehead and Sharpton. 
He testified that Sharpton “I guess, had jumped in front of [Morehead],
and I seen him with a stick raised up fixing to hit her, and that’s when I took
off and knocked him off of her and got him in a headlock and started swinging .
. . [because] I was just trying to get him off of her.”  Although McClanahan was stabbed in several
areas of his body, the most severe injuries included a ten to twelve inch gash
along his back, which was two inches deep, and a large, deep cut across his
abdomen.  He required surgery for
lacerations to his liver.  He testified
he did not see Morehead’s knife.  

            Christine,
who was incarcerated at the time of trial on other matters, was next to
testify.  Her testimony differed from
that of Sharpton and McClanahan.

I just seen the [stick] rocking, and then I seen
it go down, and I heard my niece scream, and then she moved, and [Morehead]
came around, and Brandon McClanahan pushed me into what would be called a -- I
call it my junk room; . . . . He pushed me into that doorway, and he ran and
grabbed my husband. . . . He started hitting him in the face and telling him
that he hated him and he was going to kill him. . . . But while that was
happening, [Sharpton] had hit [Morehead] in the head with that stick . . . while
Brandon had hold of him hitting him. . . . [Morehead] was being beat up, and I
was grabbing [McClanahan’s] arm telling him to stop, and then I seen something,
and then I seen [McClanahan] bleeding.

 

            During
cross-examination, Christine’s testimony was challenged.  She claimed that Morehead was being beaten up
by both Sharpton and McClanahan for three minutes, that McClanahan was putting
all of his weight into his punches, and that Morehead was hit all over the face
repeatedly.  She claimed the beating was
so bad that Morehead kept “jerking, each time, up, each time [McClanahan] was
hitting him.”  Yet, pictures of Morehead
after the incident, coupled with responding officer Paul Robertson’s testimony,
established that Morehead only had a few scrapes.  Even Morehead testified that he was not hit
in the face, but rather, on the top of the head, and that Sharpton had not hit
him.  Further, jailhouse letters from
Christine to Morehead said, “I only care about getting you acquitted,” and
revealed that she told her brother, who may or may not have been at the scene,
“not to mention the knife.”  When asked
why she jumped out of the bedroom window, Christine claimed that “it was traumatizing
to me, and I just wanted my daddy.” 

            Morehead
was last to testify.  He claimed that he
entered the house and was wrestling with Sharpton over the stick when
McClanahan forced his way past Christine, grabbed him in a headlock, and
started hitting him on the top of his head. 
Morehead said he did not remember pulling his knife out, but that the
knife was in his hand.  He testified, “I
held my hand up with the knife and said, ‘Just stay away from me.  Stay away from me,’” at which point McClanahan
“backed up a couple of steps, and then came forward again.”  At this point, Morehead claimed he was in a
daze and did not remember stabbing and slashing McClanahan’s ears, face, neck,
arm, back, and abdomen, although he also did not deny the action. 

            Officer
Robertson responded to the emergency telephone call.  Robertson made contact with McClanahan, who
stated, “[H]e had got in a fight with Buddy[4]
Morehead, and he stabbed him.” Morehead was found to have in his front pants
pocket a pocketknife, which Robertson testified was a deadly weapon.  According to Robertson, Christine appeared
“pretty upset,” and “was rocking back and forth in her chair and said, ‘He
tried to kill [McClanahan].  He tried to
kill [McClanahan].’”  Christine would not
provide a written statement.  Sharpton
told Robertson that Christine had jumped out of the window because “[Morehead]
was holding a shotgun or a gun.”  While
in jail, Morehead claimed he had been “hit in the head a couple of times,” but
when they escorted him to get medical attention, he refused treatment.  Morehead told the jury Robertson lied when he
testified Morehead refused medical attention. 


            In
evaluating legal sufficiency of the charged offense, we review all the evidence
in the light most favorable to the trial court’s judgment to determine whether
any rational jury could have found the essential elements of aggravated assault
with a deadly weapon beyond a reasonable doubt. 
Brooks v. State, 323 S.W.3d
893, 912 (Tex. Crim. App. 2010) (citing Jackson
v. Virginia, 443 U.S. 307, 319 (1979)); Hartsfield
v. State, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref’d).  Our rigorous legal sufficiency review focuses
on the quality of the evidence presented. 
Brooks, 323 S.W.3d at 917
(Cochran, J., concurring).  We examine
legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the
jury “to fairly resolve conflicts in testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); see also Vega v. State, 267 S.W.3d 912,
916 (Tex. Crim. App. 2008).  Morehead’s
indictment alleges he:

did then and there intentionally, knowingly, or
recklessly cause bodily injury to Brandon
Rhay McClanahan by attacking him on his abdomen, back, arm and neck with a
knife several times, and the defendant did then and there use or exhibit a
deadly weapon, to wit:  a pocket knife,
during the commission of said assault.

 

Morehead committed the offense of
aggravated assault if he intentionally, knowingly, or recklessly caused bodily
injury to McClanahan and used or exhibited a deadly weapon during the
assault.  Tex. Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(2) (Vernon
Supp. 2010).  A deadly weapon is anything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.  Tex. Penal Code Ann. § 1.07(a)(17)(B)
(Vernon Supp. 2010).

            Given
Morehead’s testimony, as well as the testimony of all of the other witnesses,
there was no dispute that Morehead caused bodily injury to McClanahan with a
pocketknife, which Robertson testified was a deadly weapon.  In fact, the exhibits visually depicting
McClanahan’s severe injuries and the fact that he required surgery to repair an
injured liver supported the pocketknife’s status as a deadly weapon.  Although Morehead testified he did not
remember stabbing McClanahan in the ear, face, neck, arm, back, and abdomen
because he was dazed, the jury members, as the exclusive judges of credibility
of witnesses, were free to disbelieve Morehead’s testimony in concluding that
the act was committed intelligently, knowingly, or recklessly.  Wyatt
v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).  Because a rational jury could find the
essential elements of aggravated assault with a deadly weapon beyond a
reasonable doubt, we overrule this issue.

(3)        Sufficient Evidence
Supports the Jury’s Rejection of Self-Defense

            Morehead
also argues the evidence is insufficient to support the jury’s rejection of his
self-defense claim.  When a defendant
asserts a claim of self-defense, the State has the ultimate burden of
persuasion.  Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  The burden of persuasion does not require the
production of evidence; it requires only that the State prove its case beyond a
reasonable doubt.  Id. at 594.  When a jury
finds a defendant guilty, there is an implicit finding against the defensive
theory.  Id.  When reviewing the
sufficiency of the evidence concerning the jury’s rejection of self-defense, we
look to whether any rational jury could have found against the defendant on the
self-defense issue beyond a reasonable doubt. 
Saxton v. State, 804 S.W.2d
910, 914 (Tex. Crim. App. 1991); Hernandez
v. State, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet.
ref’d).

            One
may use force against another when and to the degree he or she reasonably
believes the force is immediately necessary to protect himself or herself
against the other’s use or attempted use of unlawful force.  Tex.
Penal Code Ann. § 9.31 (Vernon Supp. 2010).  This includes using deadly force against the
other if a reasonable person in the actor’s situation would not have retreated[5]
and when and to the degree that he or she “reasonably believes” the deadly
force is immediately necessary to protect the actor against the other’s use or
attempted use of unlawful deadly force.  Tex. Penal Code Ann. § 9.32(a) (Vernon
Supp. 2010).

            Morehead’s
brief argues that Morehead was justified in defending himself in his own home
using deadly force because Christine testified McClanahan said he was going to
kill Morehead, McClanahan had Morehead in a headlock, and Sharpton was hitting
McClanahan in the head with a stick. 
Only Christine, however, testified that McClanahan made any threat to
Morehead or that Sharpton was involved in the altercation at its critical
juncture.  Her testimony was proven
questionable, at best, when Morehead took the stand and testified the fight was
between Morehead and McClanahan.  The
issue of self-defense is a fact issue to be determined by the jury, which is
free to accept or reject the defensive issue. 
Saxton, 804 S.W.2d at 913–14.  The fact-finder is the sole judge of the
weight and credibility of the evidence.  Brown v. State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008).  Therefore, the
jury was free to disbelieve Christine’s testimony that tended to support
Morehead’s self-defense claim.  

            The
remaining facts supporting self-defense was that McClanahan may have been the
aggressor, weighed approximately ninety-five pounds more than Morehead, and
admitted to punching Morehead while having him in a headlock.  Because the Jackson v. Virginia standard is the only standard that we apply,
however, we examine the evidence in the light most favorable to the
verdict.  According to Morehead’s own
testimony, there was a pause in the fighting. 
Morehead said that, when he held up the pocketknife, McClanahan “backed
up a couple of steps.”  Based on all of
the evidence, the jury could have found that: 
(1) McClanahan, who was using only his fists, was not using deadly
force given Robertson’s testimony that Morehead sustained only a few scrapes;
(2) the pause in the fighting would have prompted a reasonable person to
retreat; or (3) the degree to which Morehead used deadly force in slashing
McClanahan in the ears, face, neck, arm, back, and abdomen was beyond that
which was reasonably necessary to protect himself.  Viewing the evidence in the light most
favorable to the verdict, we find that a rational jury could have found against
Morehead on the self-defense issue beyond a reasonable doubt. 

            We
overrule this issue.

            We affirm the judgment of the trial
court. 

 

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          April 19, 2011

Date Decided:             April 20, 2011

 

Do Not Publish











[1]See Tex.
Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2010).

 





[2]We
interpret Morehead’s briefing on evidentiary sufficiency as raising two issues
on appeal:  first, a claim that the
evidence is insufficient for the jury to conclude beyond a reasonable doubt
that he committed aggravated assault, and second, a claim that the evidence is
insufficient to reject his self-defense justification beyond a reasonable
doubt.





[3]There
is some evidence suggesting that Sharpton had and used the dowel or stick in
the altercation.





[4]Morehead
was sometimes called “Buddy.”





[5]The
offense in this case occurred in 2006, before the 2007 amendments to Sections
9.31 and 9.32 of the Texas Penal Code changing the duty to retreat.