

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00103-CR

_____


DALTON RAY MOREHEAD, JR., Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 8th Judicial District Court
Delta County, Texas
Trial Court No. 6765



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

A fight between Dalton Ray Morehead, Jr., and Brandon McClanahan, possibly involving some other individuals, at Morehead's residence in Cooper, Texas, in 2006, resulted in McClanahan suffering several serious knife wounds. Morehead was later convicted by a Delta County jury for aggravated assault with a deadly weapon[1] and sentenced by the trial court to eleven years' imprisonment and a $5,000.00 fine. On appeal, Morehead claims error in a lack of full discovery and asserts that the evidence[2] was insufficient to prove aggravated assault and insufficient to allow rejection of his defense of self-defense. We affirm the trial court's judgment, because (1) Morehead's discovery complaint was not preserved for review, (2) sufficient evidence established Morehead's aggravated assault, and (3) sufficient evidence supports the jury's rejection of self-defense.

*(1) Morehead's Discovery Complaint Was Not Preserved for Review*

Morehead's appellate brief claims to include in an appendix a copy of a motion seeking discovery, ostensibly filed with the trial court. But Morehead's appendix contains no such motion. Our correspondence file indicates Morehead filed a pro se "Motion for Production" with this Court in December 2010, four years after the date of his conviction. We overruled

---

[1]*See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2010).

[2]We interpret Morehead's briefing on evidentiary sufficiency as raising two issues on appeal: first, a claim that the evidence is insufficient for the jury to conclude beyond a reasonable doubt that he committed aggravated assault, and second, a claim that the evidence is insufficient to reject his self-defense justification beyond a reasonable doubt.

Morehead's pro se motion. Our review of the clerk's record indicates that no motion for discovery was filed with the trial court.

As a prerequisite to presenting a complaint for our review, Morehead must have presented his complaint to the trial court by a timely request or motion, which was ruled on by the trial court expressly or implicitly, or on which it refused to rule despite complaint. TEX. R. APP. P. 33.1(a)(1). Because no motion for discovery was presented to the trial court, Morehead cannot complain of any action or inaction taken by the trial court with regard to this matter. His unpreserved point of error presents nothing for review and is overruled.

*(2)      Sufficient Evidence Established Morehead's Aggravated Assault*

From the witnesses at trial, several versions of the events that led to Morehead's conviction emerged. A number of facts are undisputed. Morehead argued with his wife on the day of the incident, and left his home. While angry, he returned to his home at nighttime brandishing a "dowel rod" that was made of "[w]ood, but it also had nails in each end of it." During this time, present at the Morehead residence were Morehead's wife, Christine Morehead; his niece, Angie Sharpton; Christine's friend, McClanahan; and an acquaintance, James Carson. Sharpton tried to prevent Morehead's entry into the residence, and the two struggled with the dowel rod, which eventually landed on the floor. Next, McClanahan and Morehead engaged in a fight. McClanahan "got [Morehead] in a headlock and started swinging." It is also undisputed that

3

Morehead had a pocketknife in his hand, that McClanahan did not have a weapon,[3] and that McClanahan sustained serious injuries requiring hospitalization and surgery resulting from several knife wounds to the face, ears, neck, arm, back, and abdomen. As soon as McClanahan "looked down, and there was blood running out," and "my gut was hanging out," he "put [his] hand over it" and "hollered at [Carson] to take [him] to the hospital." McClanahan and Carson left for the hospital, and Sharpton ran across the street and asked the neighbors to call 9-1-1, leaving Morehead and Christine alone in the residence. Christine exited the house by jumping out of a glass window.

Although each witness at trial confirmed the facts stated above, each cast a different light on the incident. For context, we describe the nature of Morehead's relationship with his wife. Morehead was married to Christine for ten years. The two were having marital problems and had considered divorce. Morehead was reportedly abusive to his wife, had said that he would hold her down and break her ribs, and had previously threatened to kill her. Christine was scared of Morehead; and her family, including Sharpton, was aware of the volatile relationship. This background was before the jury as each witness testified.

The jury first heard Sharpton's perspective on the events. She testified Morehead was yelling angrily when he returned to the home with "a stick in his hand." Sharpton announced Morehead's presence to the others in the home. Morehead told Sharpton to get out of the way when she prevented him from further entering the home. Sharpton "pull[ed] the stick out of his

---

[3]There is some evidence suggesting that Sharpton had and used the dowel or stick in the altercation.

hand and told him [she] wasn't going to move." This prompted Morehead to hit her in the face, which she testified "kind of force[d] me out of the way for him to get by." Sharpton added,

> I see [McClanahan] coming, and [Morehead] grabs him, and he's hitting him in the face, what it looks like to me. And I see [Morehead's] arms, you know, hitting back. And then pretty quickly they came apart. Well, that's when I noticed [McClanahan] was bleeding . . . . And that's when I looked over at [Morehead], and I seen the front of the blade.

Sharpton ran to the neighbor's home and asked them to dial 9-1-1. She went back to the Morehead home, climbed into a car, and noticed "Christine to where it looks like she's jumped out the bedroom window and she's coming toward the car." Sharpton said she saw Morehead in the garage placing what looked like a gun in the trunk of his car.

McClanahan testified that he was in the Morehead house doing drugs when he witnessed the confrontation between Morehead and Sharpton. He testified that Sharpton "I guess, had jumped in front of [Morehead], and I seen him with a stick raised up fixing to hit her, and that's when I took off and knocked him off of her and got him in a headlock and started swinging . . . [because] I was just trying to get him off of her." Although McClanahan was stabbed in several areas of his body, the most severe injuries included a ten to twelve inch gash along his back, which was two inches deep, and a large, deep cut across his abdomen. He required surgery for lacerations to his liver. He testified he did not see Morehead's knife.

Christine, who was incarcerated at the time of trial on other matters, was next to testify. Her testimony differed from that of Sharpton and McClanahan.

5

I just seen the [stick] rocking, and then I seen it go down, and I heard my niece scream, and then she moved, and [Morehead] came around, and Brandon McClanahan pushed me into what would be called a -- I call it my junk room; . . . . He pushed me into that doorway, and he ran and grabbed my husband. . . . He started hitting him in the face and telling him that he hated him and he was going to kill him. . . . But while that was happening, [Sharpton] had hit [Morehead] in the head with that stick . . . while Brandon had hold of him hitting him. . . . [Morehead] was being beat up, and I was grabbing [McClanahan's] arm telling him to stop, and then I seen something, and then I seen [McClanahan] bleeding.

During cross-examination, Christine's testimony was challenged. She claimed that Morehead was being beaten up by both Sharpton and McClanahan for three minutes, that McClanahan was putting all of his weight into his punches, and that Morehead was hit all over the face repeatedly. She claimed the beating was so bad that Morehead kept "jerking, each time, up, each time [McClanahan] was hitting him." Yet, pictures of Morehead after the incident, coupled with responding officer Paul Robertson's testimony, established that Morehead only had a few scrapes. Even Morehead testified that he was not hit in the face, but rather, on the top of the head, and that Sharpton had not hit him. Further, jailhouse letters from Christine to Morehead said, "I only care about getting you acquitted," and revealed that she told her brother, who may or may not have been at the scene, "not to mention the knife." When asked why she jumped out of the bedroom window, Christine claimed that "it was traumatizing to me, and I just wanted my daddy."

Morehead was last to testify. He claimed that he entered the house and was wrestling with Sharpton over the stick when McClanahan forced his way past Christine, grabbed him in a headlock, and started hitting him on the top of his head. Morehead said he did not remember

6

pulling his knife out, but that the knife was in his hand. He testified, "I held my hand up with the knife and said, 'Just stay away from me. Stay away from me,'" at which point McClanahan "backed up a couple of steps, and then came forward again." At this point, Morehead claimed he was in a daze and did not remember stabbing and slashing McClanahan's ears, face, neck, arm, back, and abdomen, although he also did not deny the action.

Officer Robertson responded to the emergency telephone call. Robertson made contact with McClanahan, who stated, "[H]e had got in a fight with Buddy[4] Morehead, and he stabbed him." Morehead was found to have in his front pants pocket a pocketknife, which Robertson testified was a deadly weapon. According to Robertson, Christine appeared "pretty upset," and "was rocking back and forth in her chair and said, 'He tried to kill [McClanahan]. He tried to kill [McClanahan].'" Christine would not provide a written statement. Sharpton told Robertson that Christine had jumped out of the window because "[Morehead] was holding a shotgun or a gun." While in jail, Morehead claimed he had been "hit in the head a couple of times," but when they escorted him to get medical attention, he refused treatment. Morehead told the jury Robertson lied when he testified Morehead refused medical attention.

In evaluating legal sufficiency of the charged offense, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*,

---

[4]Morehead was sometimes called "Buddy."

443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see also Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). Morehead's indictment alleges he:

> did then and there intentionally, knowingly, or recklessly cause bodily injury to **Brandon Rhay McClanahan** by attacking him on his abdomen, back, arm and neck with a knife several times, and the defendant did then and there use or exhibit a deadly weapon, to wit: a pocket knife, during the commission of said assault.

Morehead committed the offense of aggravated assault if he intentionally, knowingly, or recklessly caused bodily injury to McClanahan and used or exhibited a deadly weapon during the assault. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2010). A deadly weapon is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2010).

8

Given Morehead's testimony, as well as the testimony of all of the other witnesses, there was no dispute that Morehead caused bodily injury to McClanahan with a pocketknife, which Robertson testified was a deadly weapon. In fact, the exhibits visually depicting McClanahan's severe injuries and the fact that he required surgery to repair an injured liver supported the pocketknife's status as a deadly weapon. Although Morehead testified he did not remember stabbing McClanahan in the ear, face, neck, arm, back, and abdomen because he was dazed, the jury members, as the exclusive judges of credibility of witnesses, were free to disbelieve Morehead's testimony in concluding that the act was committed intelligently, knowingly, or recklessly. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). Because a rational jury could find the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt, we overrule this issue.

*(3)     Sufficient Evidence Supports the Jury's Rejection of Self-Defense*

Morehead also argues the evidence is insufficient to support the jury's rejection of his self-defense claim. When a defendant asserts a claim of self-defense, the State has the ultimate burden of persuasion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). The burden of persuasion does not require the production of evidence; it requires only that the State prove its case beyond a reasonable doubt. *Id.* at 594. When a jury finds a defendant guilty, there is an implicit finding against the defensive theory. *Id.* When reviewing the sufficiency of the evidence concerning the jury's rejection of self-defense, we look to whether any rational jury

9

could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

One may use force against another when and to the degree he or she reasonably believes the force is immediately necessary to protect himself or herself against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31 (Vernon Supp. 2010). This includes using deadly force against the other if a reasonable person in the actor's situation would not have retreated[5] and when and to the degree that he or she "reasonably believes" the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32(a) (Vernon Supp. 2010).

Morehead's brief argues that Morehead was justified in defending himself in his own home using deadly force because Christine testified McClanahan said he was going to kill Morehead, McClanahan had Morehead in a headlock, and Sharpton was hitting McClanahan in the head with a stick. Only Christine, however, testified that McClanahan made any threat to Morehead or that Sharpton was involved in the altercation at its critical juncture. Her testimony was proven questionable, at best, when Morehead took the stand and testified the fight was between Morehead and McClanahan. The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject the defensive issue. *Saxton*, 804 S.W.2d at 913–14. The fact-finder is the

---

[5]The offense in this case occurred in 2006, before the 2007 amendments to Sections 9.31 and 9.32 of the Texas Penal Code changing the duty to retreat.

10

sole judge of the weight and credibility of the evidence. *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Therefore, the jury was free to disbelieve Christine's testimony that tended to support Morehead's self-defense claim.

The remaining facts supporting self-defense was that McClanahan may have been the aggressor, weighed approximately ninety-five pounds more than Morehead, and admitted to punching Morehead while having him in a headlock. Because the *Jackson v. Virginia* standard is the only standard that we apply, however, we examine the evidence in the light most favorable to the verdict. According to Morehead's own testimony, there was a pause in the fighting. Morehead said that, when he held up the pocketknife, McClanahan "backed up a couple of steps." Based on all of the evidence, the jury could have found that: (1) McClanahan, who was using only his fists, was not using deadly force given Robertson's testimony that Morehead sustained only a few scrapes; (2) the pause in the fighting would have prompted a reasonable person to retreat; or (3) the degree to which Morehead used deadly force in slashing McClanahan in the ears, face, neck, arm, back, and abdomen was beyond that which was reasonably necessary to protect himself. Viewing the evidence in the light most favorable to the verdict, we find that a rational jury could have found against Morehead on the self-defense issue beyond a reasonable doubt.

We overrule this issue.

We affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:     April 19, 2011
Date Decided:       April 20, 2011

Do Not Publish