**Opinion issued December 15, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00337-CR

————————————

**MATTHEW JACOB CONTRERAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1371344**

---

## MEMORANDUM OPINION

A jury convicted appellant Matthew Jacob Contreras of murder and found that he used a deadly weapon, which was not a firearm, in the commission of the offense. *See* TEX. PENAL CODE § 19.02. The trial court assessed punishment at 40 years in prison. On appeal, appellant raises two issues, arguing that the evidence

was insufficient to support the jury's implicit rejection of his self-defense argument and that the court erred by excluding certain evidence pertaining to the complainant's gang involvement.

We conclude that the State met its burden of persuasion as to the self-defense claim, and that the evidence was legally sufficient to support the jury's verdict. In addition, we conclude that the evidentiary complaints were waived. Accordingly, we affirm.

## Background

Appellant Matthew Contreras had a close friendship with his mentally impaired uncle, Lazaros Contreras. Lazaros shared a home with his brother, Abel, his niece Lea Martinez, and three other relatives. Appellant and Lazaros had spent a Saturday afternoon drinking beer when appellant's friend Jaime Garcia joined them at Lazaros's house. Later the complainant, Erick Bejarano, arrived. Bejarano suggested going out and robbing people, but Garcia dissuaded him. The men continued drinking beer outside through the night. But Bejarano became aggressive and threw beer bottles on the ground. Appellant left briefly to walk a visiting neighbor home.

Lazaros testified that when appellant left, Bejarano assaulted him with a beer bottle, cutting his face and fingertips as he held up his hands defensively. When appellant returned around 3:00 a.m., he saw Lazaros sitting alone in a chair near

2

the garage, bleeding. After that, Lazaros went inside to wash up and did not return outside until the police arrived.

Appellant testified that Bejarano had revealed that he was a member of a Central American gang. Because childhood experiences had familiarized him with the behavior of gang members, appellant believed that he, his family, and their property were in danger. Appellant testified that he grabbed a large chef's knife from the kitchen for protection. Meanwhile, Garcia and Bejarano had picked up R.R., who was approximately 16 years old, and returned to Lazaros's house to retrieve an item that Bejarano had left behind. R.R. was carrying a handgun.

The trial testimony about what happened next conflicted in some respects. After Garcia parked by a streetlight near Lazaros's house, a gun was fired. Garcia testified that he was in in the driver's seat, and Bejarano and R.R. were outside the car at the time. Garcia said that one of them fired a gun, but he did not see who. R.R. testified that Bejarano took the gun from him and fired it. Martinez testified that she heard the gunshot, called the police, and then hid in her room until they arrived. Abel did not hear a gunshot, and Lazaros did not remember hearing a gunshot.

Appellant testified that he heard a gunshot, which prompted him to run toward Garcia's car, in fear for his family, their home, and their possessions. Garcia testified that appellant angrily approached the car, demanding to know who

fired the gun. When everyone calmed down, the men walked toward the garage. Garcia testified that appellant led the way, Bejarano followed behind, with R.R. next. Garcia followed behind all three of the other men, and he did not see a gun during the walk back to the garage.

Near the garage, appellant and Bejarano began to fight. R.R., who testified that Bejarano had been harassing and ridiculing appellant, left as soon as the fight began. He hid the gun that he had been carrying in a nearby park, and he retrieved it the following day.

Garcia testified that appellant was angry about the gunshot, and all the men were heavily intoxicated. Garcia testified that he tried unsuccessfully to break up the fight when appellant pulled a knife on Bejarano. Appellant stabbed Bejarano, who tried to escape and screamed in pain. When he fell to the ground, appellant kicked him and continued to stab him. Garcia testified that at one point, the knife became stuck in Bejarano's head. Eventually appellant stopped stabbing Bejarano, attempted to enter the house, and fled when he heard sirens and realized the door was locked. Meanwhile, Bejarano lay dead or dying on the driveway. The police arrived nearly immediately after appellant fled.

Appellant described Bejarano as the aggressor, bearing down on him and overpowering him physically. He testified that Bejarano was bigger and that he was unable to push him away. Appellant testified that he did what he "felt

4

necessary to protect" his "life and to protect the lives" of his "uncle and everybody else that was in the house." He admitted stabbing Bejarano to death, but he said he feared for his life, that he blacked out, and that he had no memory of the stabbing. Appellant stopped stabbing Bejarano when he realized that he was on the ground, covered in blood, and not moving. He heard sirens, ran home, got in bed, and went to sleep. At trial, he said he thought he would "wake up the next day and it would all be a dream." He stated: "I just didn't want to be there. I just wanted to be home."

Houston Police Department Officer R. Wieners responded to the scene of the crime and found Bejarano dead on the driveway. He also found a bloody chef's knife with a bent tip. Officer J. Huckabee went to appellant's house and found him asleep in his bed, wearing only a shirt and covered with a blanket from his waist down. His arms and face were covered in blood. His jeans, which were beside the bed, also had blood on them. Officer Huckabee woke appellant, helped him get dressed, and took him back to the scene of the murder to await the arrival of homicide investigators. Officer Huckabee testified that he saw no injuries on appellant.

Appellant was indicted for murdering Bejarano with a deadly weapon. He pleaded not guilty, and at trial he argued that he acted in self-defense. Appellant's argument centered on his fear of Bejarano, whom appellant believed was involved

5

with a violent gang. At trial, forensic evidence showed that Bejarano had not recently fired a gun when he was killed. The autopsy report showed that Bejarano died from 35 sharp force wounds. The detective who took appellant's statement testified that he never mentioned anything about a gunshot. In addition, appellant admitted that this was not the first stabbing for which he faced criminal consequences. He testified that while at school two years earlier, he stabbed a boy in the neck with a scalpel because he believed that the boy wanted to fight. Then he had claimed that he could not recall the details of the stabbing because he had blacked out.

The jury found appellant guilty of murder, implicitly rejecting his self-defense claim. Appellant filed a notice of appeal.

**Analysis**

Appellant raises two issues on appeal. He challenges the sufficiency of the evidence to support the jury's implicit rejection of his claim of self-defense. He also argues that the trial court erred by excluding evidence relating to the complainant's affiliation with a gang.

**I.    Sufficiency of the evidence**

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010). We defer to the responsibility of the factfinder to fairly resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from the facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 898–99. In so doing, we may not reevaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Brooks*, 323 S.W.3d at 898–99. This standard applies equally to circumstantial and direct evidence. *Laster v. State*, 275 S.W.3d 512, 517–18 (Tex. Crim. App. 2009).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE § 19.02. A "person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). Deadly force is justified "to protect the actor against" another's "use or attempted use of unlawful deadly force" and to prevent another's "imminent commission" of murder, kidnapping, sexual assault, or robbery. *Id.* § 9.32(a). A person is justified in using deadly force against another to protect a third person if, "under the circumstances the actor reasonably believes

7

them to be, the actor would be justified" in using force against the other under section 9.31 or 9.32 "to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect" and "the actor reasonably believes that his intervention is immediately necessary to protect the third person." *Id.* § 9.33.

The defendant bears the initial burden to produce evidence supporting a justification defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces some evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion does not require the State to produce evidence; it requires only that it prove its case beyond a reasonable doubt. *Id.*; *Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.–Houston [14th Dist.] 2010, pet. ref'd). Thus, to convict a defendant of murder after he has raised the issue of self-defense, the State is required to prove the elements of the offense beyond a reasonable doubt and to persuade the jury beyond a reasonable doubt that the defendant did not kill in self-defense. *Zuliani*, 97 S.W.3d at 594; *McClesky v. State*, 224 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Appellant admitted killing Bejarano by repeatedly stabbing him with a large knife. This satisfies the elements of murder. *See* TEX. PENAL CODE § 19.02. On appeal, appellant argues that the evidence was insufficient to support the jury's

implicit rejection of his argument that he was acting in self-defense. He argues that the State failed "to produce enough evidence to disprove self-defense beyond a reasonable doubt." But the State had no burden to produce evidence as to the self-defense issue and had only a burden of persuasion beyond a reasonable doubt that appellant committed murder. *See Zuliani*, 97 S.W.3d at 594; *McClesky*, 224 S.W.3d at 409.

Appellant also limits his insufficiency arguments to selected pieces of evidence that fail to contradict his testimony, while ignoring the evidence that does rebut his testimony. For example, appellant argues that his self-defense claim was not contradicted by R.R.'s admission that he fled when appellant wielded a knife (which was proof that R.R. did not witness the whole fight), Garcia's testimony that appellant stabbed Bejarano many times, and forensic evidence that Bejarano's blood was found on the knife and appellant's clothes.

While those isolated fragments of the record may not have contradicted appellant's self-defense claim, other parts of the evidence did. For example, appellant testified that he defended himself from Bejarano's overpowering assault, but Officer Huckabee saw Contreras half-undressed, helped him get dressed, and observed no injuries on him. Garcia testified that he tried to break up the fight, but appellant continued assaulting Bejarano, who was screaming in pain and trying to escape.

Ultimately, because appellant was the only witness to provide any evidence relevant to his self-defense claim, the jury's decision to accept or reject it hinged on its assessment of his credibility. That credibility was undermined by appellant's own testimony: he testified that he blacked out during the fight. A rational jury could have questioned appellant's memory as to whether his use of deadly force was immediately necessary at the time he killed Bejarano. The jury was also free to consider the amount of alcohol he drank and his behavior after the stabbing. It was the jury's responsibility to weigh and resolve conflicting evidence, assess witness credibility, and draw reasonable inferences in arriving at a verdict. *See Brooks*, 323 S.W.3d at 898–99. The jury's verdict in this case is supported by the evidence, we hold that it is legally sufficient, and we overrule this issue.

## II.    Waiver of evidentiary issue

In his second issue, appellant argues that the court erred by excluding evidence of Bejarano's association with a gang. In particular, he contends that the court improperly excluded "gang tracker" records connecting Bejarano to the Mara 18th Street gang, an internet article about the gang from a British news organization, and testimony from Garcia corroborating appellant's testimony that Bejarano bragged about his gang involvement.

To preserve error regarding a trial court's exclusion of evidence, a party must make an offer of proof unless the substance of the evidence was apparent to

the trial court from the context of the questioning. Tᴇx. R. Eᴠɪᴅ. 103(a)(2). "The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful." *Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009). Appellant did not offer the "gang tracker" records or the internet article into evidence, and he made no record of what Garcia would have said if asked about Bejarano's bragging about his gang involvement. To the contrary, Garcia testified that he did not know Bejarano was associated with the Mara 18th Street gang. Our independent review does not reveal that the substance of the allegedly excluded evidence was apparent from the record, and appellant does not argue otherwise.

We hold that error was not preserved as to the allegedly excluded evidence, and we overrule this issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Bland, Massengale, and Lloyd.

Do not publish. Tᴇx. R. Aᴘᴘ. P. 47.2(b).