

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00712-CR

Lisa Ann **ESCOBEDO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 13, Bexar County, Texas
Trial Court No. 565471
Honorable Crystal D. Chandler, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Rebeca C. Martinez, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: June 19, 2019

AFFIRMED

Lisa Ann Escobedo was convicted by a jury of assault. On appeal, Escobedo contends the evidence is legally insufficient to support the jury's implicit rejection of her claim that she acted in self-defense. Escobedo also contends the trial court erred in excluding evidence of her intervention in a family law case involving custody of her grandson. We affirm the trial court's judgment.

## BACKGROUND

Angelina Sciaraffa, the complainant, and Liberado Maldonado, IV are the parents of a son who was four years old at the time of the trial in the underlying cause. We will refer to the child as S. in this opinion. Escobedo is Maldonado's mother.

On July 9, 2017, Sciaraffa arrived at Escobedo's house because she knew S. was there, but neither Maldonado nor Escobedo was answering her calls. Escobedo's husband opened the front door for Sciaraffa, who gathered S. and his belongings and exited the house. Escobedo followed Sciaraffa to her car.

According to Sciaraffa, Escobedo began pulling her hair and hitting and scratching her while she was seated in her car, and she hit Escobedo with the car door while she was trying to close it in an effort to drive away. After she drove away, she put S. in his car seat but had to turn around in order to exit the neighborhood. As she drove back down the street, Escobedo's husband, who was standing in the street, slapped her car. Sciaraffa called 911 when she was almost at her house to report the incident. About thirty minutes after the first call, Sciaraffa called 911 to ask if an officer was still going to come to her house. Tape recordings of the calls were played for the jury. The detective who was dispatched to Sciaraffa's home took photographs of her injuries which were admitted into evidence. The photographs show two scratches on Sciaraffa's left forearm and scratches under her left eye.

According to Escobedo, she made physical contact with Sciaraffa's face because Sciaraffa tried to close the door and drive off while Escobedo was trapped between the open door and the frame of the car. Escobedo's husband also testified his wife was pinned between the door and the car itself, and his wife struck Sciaraffa in effort to free herself as Sciaraffa was attempting to drive away. Escobedo and her husband testified Sciaraffa almost hit him when she drove back down the street. Escobedo called 911, and a tape recording of the call was played for the jury. During

the 911 call, Escobedo reported that Sciaraffa almost ran over her husband, but she did not report being pinned or assaulted by Sciaraffa. Although the 911 operator stated an officer would be dispatched to Escobedo's home, no officer arrived to take a report.

After hearing all of the evidence presented at trial, the jury found Escobedo guilty of assault, implicitly rejecting her claim of self-defense. The jury assessed Escobedo's punishment at thirty days in jail and a fine of $1,000. The trial court suspended the jail time and placed Escobedo on twelve months' community supervision.

## SUFFICIENCY OF THE EVIDENCE

In her first issue, Escobedo contends the evidence is legally insufficient to support the jury's implicit rejection of her claim of self-defense.

### A.    Standard of Review

Once a defendant produces some evidence raising the issue of self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). To meet its burden of persuasion, the State is not required to produce additional evidence. *Saxton*, 804 S.W.2d at 913. If the jury finds the defendant guilty, it has made an implicit finding against any defensive theory raised by the defendant. *Id*. at 914; *see also Zuliani*, 97 S.W.3d at 594.

When a defendant challenges the legal sufficiency of the evidence to support the jury's implicit rejection of his self-defense claim, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at

914; *see also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Zuniga v. State*, 551 S.W.3d 728, 732-33 (Tex. Crim. App. 2018). As the sole judge of the credibility of witnesses, the jury is free to believe all, some, or none of a witness's testimony. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Monreal v. State*, 546 S.W.3d 718, 724 (Tex. App.—San Antonio 2018, pet. ref'd). "We may not re-weigh the evidence or substitute our judgment for that of the factfinder." *Zuniga*, 551 S.W.3d at 732.

B.      Analysis

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a). In this case, the jury was instructed that the State was required to prove Escobedo's conduct was not justified by self-defense by proving beyond a reasonable doubt that: (1) Escobedo did not believe her conduct was immediately necessary to protect herself against Sciaraffa's use or attempted use of unlawful force; or (2) Escobedo's belief was not reasonable.

Escobedo does not challenge the sufficiency of the evidence to support the jury's finding of the essential elements of the assault offense. Instead, Escobedo challenges the sufficiency of the evidence to support the jury's implicit rejection of her self-defense claim. Escobedo asserts the evidence established Sciaraffa had her trapped between the car door and the frame and attempted to drive away. Accordingly, Escobedo contends the evidence establishes she made "a proper and correct split second decision to use minimal force against Ms. Sciaraffa" in order to "free herself."

As previously noted, we defer to the jury's assessment of the credibility of the witnesses. *Zuniga*, 551 S.W.3d at 732-33. In this case, the jury could have disbelieved Escobedo's and her

husband's version of the events and believed Sciaraffa's testimony that Escobedo hit and scratched her while she was seated in the car, and that Sciaraffa only hit Escobedo with the car door while trying to protect herself by driving away. Having reviewed all of the evidence in the light most favorable to the prosecution, we conclude the jury rationally could have rejected Escobedo's self-defense claim.

### EXCLUSION OF EVIDENCE

In her second and third issues, Escobedo contends the trial court abused its discretion in excluding evidence that she intervened in a family law case involving the custody of S. to show Sciaraffa had an ulterior motive for her testimony. Escobedo first contends the exclusion of the evidence effectively precluded her from presenting a defense resulting in constitutional error, and the record does not show beyond a reasonable doubt that the error in excluding the evidence did not contribute to her conviction. Alternatively, Escobedo contends the evidence was highly relevant and its exclusion had an injurious effect on her trial by preventing the jury from hearing a significant aspect of her defense.

A.      Standard of Review

"An appellate court reviews a trial court's ruling on the admission of evidence for an abuse of discretion." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). "Erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002). If an evidentiary ruling rises to the level of constitutional error, the trial court's judgment must be reversed unless the appellate court "determines beyond a reasonable doubt that the error did not contribute to the conviction." TEX. R. APP. P. 44.2(a). An erroneous evidentiary ruling not rising to the level of constitutional error must be disregarded if it "does not affect substantial rights." TEX. R. APP. P. 44.2(b). A substantial right is affected when an error has "a substantial and

injurious effect or influence in determining the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010).

        B.     *Jones v. State*

The Texas Court of Criminal Appeals recently addressed a case involving similar facts. *See Jones v. State*, 571 S.W.3d 764 (Tex. Crim. App. 2019). In that case, the appellant was charged with assaulting Amy Jimenez, who he was dating, by striking her with his hand. 571 S.W.3d at 765. Jimenez did not testify at trial. *Id*. Instead, her mother, Adeline Gonzales, testified. *Id*. Gonzales testified Jimenez, the appellant, and their two-year-old daughter were living with her. *Id*. On December 17, 2014, after tensions flared, appellant went to the garage, and Gonzales went to her bedroom with the child. *Id*. at 765-66. Around 10:00 p.m., Gonzales informed Jimenez that the child needed some "stuff for school," and Jimenez went into the garage to get the car keys from appellant. *Id*. at 766. Gonzales testified she watched from the kitchen doorway as a "heated conversation" ensued between Jimenez and appellant. *Id*. Because appellant continued to focus on his cell phone, Gonzales testified Jimenez either "whacked," "slapped," or "tapped" the cell phone after which appellant hit Jimenez in the face causing her lip to bleed and swell. *Id*. Gonzales called 911 and told Jimenez to go to her father's house. *Id*. Gonzales testified appellant began to ransack the house before returning to the garage and screaming at Gonzales. *Id*. Gonzales testified Jimenez did not return to the house until the police arrived. *Id*. Letters appellant wrote Jimenez from jail were also introduced into evidence in which appellant acknowledged Gonzales was a witness. *Id*.

The testimony of the first police officer to arrive at the scene conflicted with Gonzales's testimony in certain respects. *Id*. The officer testified Jimenez was at the scene when he arrived, and he saw no evidence the house had been ransacked. *Id*.

Appellant's testimony was largely consistent with Gonzales's except he testified Jimenez came into the garage several times before the incident "trying to pick a fight." *Id*. at 767. Appellant also testified Jimenez kicked the phone from his hand, causing him to drop it. *Id*. Appellant also testified he doubted Gonzales could have seen the incident given their respective positions in the garage. *Id*.

On cross-examination, appellant sought to question Gonzales about a pending proceeding by Child Protective Services to terminate the parental rights of both Jimenez and appellant. *Id*. The trial court ruled the inquiry would not be relevant and did not allow the questions. *Id*. The court of appeals held the trial court abused its discretion in denying appellant the constitutional right to question Gonzales about her interest in the outcome of the parental termination proceedings and her possible bias in testifying against him. *Id.* at 768.

The Texas Court of Criminal Appeals agreed the trial court abused its discretion, noting a defendant is "permitted to explore any plausible basis for witness bias, whether or not the witness is willing to admit it." *Id*. at 769. Although the court stated the offer of proof regarding the testimony appellant sought to elicit was "less than ideally thorough," the court concluded appellant should have been allowed to question Gonzales about the termination proceeding "in the jury's presence so that it could gauge the plausibility of her response." *Id*. at 769-70. Given Gonzales's awareness of the proceedings, her belief that the child was not safe in appellant's custody, and that Gonzales often took care of the child, the court held "[i]t would take no great leap of logic for the jury to infer that Gonzales was motivated by the hope or expectation that, if Appellant were convicted of the offense, it would diminish his chances of retaining custody of his daughter." *Id*. at 770. Accordingly, the court held the appellant should have been permitted to question Gonzales about the termination proceeding. *Id*.

The court further held, however, that appellant was not harmed by the trial court's ruling. *Id*. at 770-71. The court noted "[t]he only material difference between Appellant's account and Gonzales's was their respective descriptions of Jimenez's initial assault upon Appellant which gave rise to Appellant's claim of self-defense;" i.e. whether Jimenez "whacked" the cell phone or whether Jimenez "karate-kicked" appellant's hand causing the cell phone to drop. *Id*. at 771. The court concluded, "Nothing about this particular dispute could likely have dictated the outcome of the jury's resolution of Appellant's self-defense claim." *Id*. In addition, the court concluded, "any cross-examination to expose Gonzales's potential bias would only marginally have increased the damage already inflicted upon her general credibility by other evidence" including: (1) the discrepancies between her testimony and the police officer's testimony; and (2) the potential bias inherent in the fact that Gonzales was Jimenez's mother and the child's grandmother. *Id*. at 771-72. The court reasoned, "That Gonzales had an interest in assuring that Appellant did not retain custody of the child would only have added incrementally to the jury's perception of her as an interested witness of questionable reliability." *Id*. at 772. Accordingly, the court was "confident beyond a reasonable doubt that the jury would have rejected Appellant's self-defense claim even had it been made aware of the more particularized reasons to question Gonzales's motives in testifying." *Id*.

C.     Analysis

For purposes of this opinion, we will assume the trial court abused its discretion in refusing to allow Escobedo to question Sciaraffa about Escobedo's intervention in the family law case involving custody of S. As in *Jones*, any cross-examination to expose Sciaraffa's potential bias "would only marginally have increased the damage already inflicted upon her general credibility by other evidence," including: (1) testimony that Escobedo and Sciaraffa did not get along; (2) Escobedo's prior reporting of Sciaraffa to Child Protective Services; and (3) Escobedo's custody

of S. for six months beginning in September of 2016 under a safety plan implemented by Child Protective Services. *See id.* at 771-72. Thus, questioning regarding Escobedo's intervention in the custody dispute "would only have added incrementally to the jury's perception of [Sciaraffa] as an interested witness of questionable reliability." *See id*. at 772. This is especially true since the assault had been reported to the police and the photographs of Sciaraffa's injuries had been taken by the detective months before Escobedo's intervention in the child custody suit. Therefore, we are "confident beyond a reasonable doubt that the jury would have rejected [Escobedo's] self-defense claim even had it been made aware of the more particularized reasons to question [Sciaraffa's] motives in testifying." *See id*.

Escobedo's second and third issues are overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Beth Watkins, Justice

DO NOT PUBLISH