**Opinion issued July 2, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-23-00318-CR**
_____

**LUIS URVINA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 94832-CR**

---

**MEMORANDUM OPINION**

Appellant Luis Urvina appeals his conviction for murder. He challenges the sufficiency of the evidence regarding his self-defense claim and the trial court's admission of evidence of his prior conviction. We affirm the trial court's judgment.

## BACKGROUND

A grand jury indicted Urvina for the murder of Michelle Patton. Urvina pleaded not guilty, and the case proceeded to trial before a jury.

At trial, the jury heard testimony from Stephen Patton, Michelle's husband. Stephen testified that he and Michelle were driving home one night when they stopped for gas. Michelle said she thought "somebody was fixing to throw something at the car." At the gas pump, both Stephen and Michelle got out of the car and approached three young men who were walking behind the car. Stephen admitted he was carrying a push-button knife, but he claimed that he kept it concealed. Stephen said he asked the young men "if they were fixing to throw something at his car," and then the group started arguing. Stephen said that one of the young men told Urvina "to light his a** up." Urvina hesitated for a second, then pulled out a gun and started shooting.

The jury also watched the gas station's surveillance video. The video showed that Stephen's car pulled up to a gas pump and parked, and Stephen and Michelle got out and walked toward the three young men who were walking behind the car. The group appear to talk to each other for a few moments, and then Michelle walked away, toward the front of the car, to throw something in the trash. At that point, one of the young men pulled out a gun and started shooting. Stephen ran around the car and hid behind it, but Michelle was shot, and she died at the scene.

Urvina's friend, Aaron Rojas, was one of the young men at the scene. According to Rojas, that night he, Urvina, and Urvina's brother Jose were walking across the street to the gas station to buy cigarettes. As they were in the street, a car swerved toward them, coming very close, and then pulled into the gas station. Rojas said they just kept walking toward the gas station, but a man and woman got out of the car and walked toward them. The man was carrying two knives. Rojas claimed the man and woman both said to them, "What y'all want to do?" They began arguing, then Jose said, "Shoot him, shoot him." Urvina hesitated, then started shooting.

The jury found Urvina guilty of murder. Urvina appeals his conviction.

## DISCUSSION

### A. Sufficiency of the Evidence

In his first issue, Urvina argues the evidence at trial was insufficient to support his conviction because the State failed to prove he was not acting in self-defense when he used deadly force against Stephen and Michelle.

### *Standard of Review and Applicable Law*

In reviewing the legal sufficiency of the evidence to support a conviction, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We may not sit as the thirteenth juror and re-evaluate the weight and credibility of

the evidence, substituting our judgment for that of the jury. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we defer to the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We presume the jury resolved any conflicting inferences in favor of the verdict, and we defer to the jury's resolution. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1), (2).

A person charged with murder may claim his conduct was justified as self-defense. *See id.* § 9.02. Self-defense is a confession-and-avoidance defense, meaning the person claiming it must admit, or at least not deny, that he engaged in the charged conduct. *See Rodriguez v. State*, 629 S.W.3d 229, 231 (Tex. Crim. App. 2021). A person is justified in using force against another as self-defense "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). Deadly force in self-defense is justified when a person reasonably believes the force is immediately necessary to protect the actor against

4

the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a)(2). The use of force against another is not justified in response to verbal provocation alone. *Id.* § 9.31(b)(1).

The defendant bears the burden of producing some evidence to support a claim of self-defense. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). Once the defendant produces some evidence raising self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *See id.*; *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *see also Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). To meet its burden of persuasion, the State need not produce additional evidence but must prove its case beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913. Self-defense is an issue of fact for the jury to determine. *Id.* The jury is the sole judge of the credibility of defensive evidence, and it is free to accept it or reject it. *Id.* at 914. If the jury finds the defendant guilty, it has made an implicit finding against any defensive theory raised by the defendant. *Id.*; *Zuliani*, 97 S.W.3d at 594.

When an appellant challenges the jury's rejection of self-defense, we examine whether a rational jury could have rejected the defense beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914.

*Analysis*

Urvina has not disputed, at trial or on appeal, that he shot Michelle and she died from that injury. Instead, Urvina argues that he shot in self-defense and that the jury could not have reasonably rejected his self-defense claim because he presented evidence that Stephen and Michelle began the confrontation. However, even if Stephen and Michelle began the confrontation, whether Urvina reasonably believed deadly force was immediately necessary to protect himself against Stephen's use or attempted use of unlawful deadly force was a fact issue for the jury to decide. *See* TEX. PENAL CODE § 9.32(a)(2); *Saxton*, 804 S.W.2d at 913.

The jury heard conflicting evidence about what happened that night. Stephen testified that after he saw Urvina and his friends behind the car, Stephen and Michelle got out of the car. Stephen admitted he was carrying a push-button knife but claimed that he kept it concealed. Stephen testified that Urvina and his friends cursed at him, and Urvina "took an aggressive stance" and reached for his waistband. Stephen claimed at that point he did not move or lunge towards them and he never pointed his knife; he claimed there was only yelling back and forth. Stephen testified that Jose gave the command to shoot, and Urvina "hesitated for about a second, then he pulled the gun" and started shooting.

Rojas, however, gave a different account of events. Rojas testified that both Stephen and Michelle approached them, with Stephen brandishing two knives. He

6

claimed Stephen was acting like he wanted to come at them with the knives. Rojas testified that he felt threatened. On cross-examination, Rojas admitted that Jose gave the command, "Shoot him, shoot him," then Urvina hesitated a couple of seconds and began shooting.

The jury, as the sole judge of credibility, was free to reject Rojas's version of events and accept Stephen's version. *See Saxton*, 804 S.W.2d at 914. The jury could reasonably have believed that Stephen, who claimed he kept his knife concealed, did not use or attempt to use unlawful deadly force, regardless of whether Stephen and Michelle initiated the verbal confrontation. *See* TEX. PENAL CODE § 9.32(a)(2) (stating that deadly force is justified when person reasonably believes deadly force is immediately necessary to protect himself against another's use or attempted use of unlawful deadly force). Both Stephen and Rojas testified that initially, the confrontation was only a verbal exchange. Thus, the jury could have reasonably believed that Urvina began shooting in response to verbal provocation alone, which does not justify the use of force or deadly force. *See id.* § 9.31(b)(1) (stating that use of force is not justified in response to verbal provocation alone).

In light of the conflicting evidence, the jury could have rejected Urvina's claim of self-defense beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. We therefore overrule Urvina's first issue.

**B.      Evidence of Prior Convictions**

In his second issue, Urvina argues the trial court abused its discretion by admitting evidence of his prior convictions. At trial, the State introduced two judgments of conviction to show that Urvina had prior convictions and was thus prohibited from carrying a firearm on the night he shot Michelle. *See* TEX. PENAL CODE § 46.04(b) (prohibiting person convicted of assault involving family member from possessing firearm for five years after release from confinement or community supervision following conviction). Urvina does not dispute that his prior convictions were relevant evidence; instead, he argues the judgments themselves were unfairly prejudicial because they contained unnecessary details about his prior convictions.

*Standard of Review and Applicable Law*

Generally, relevant evidence is admissible unless its probative value is substantially outweighed by certain factors like unfair prejudice. TEX. R. EVID. 402, 403; *see Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Hart*, 688 S.W.3d at 891.

Erroneously admitting evidence is a non-constitutional error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). We must disregard a non-constitutional error unless it affects the appellant's substantial rights. *Id.*; TEX. R. APP. P. 44.2(b). An error affects the appellant's substantial rights if it has a

8

"substantial and injurious effect or influence in determin[ing] the jury's verdict." *Gonzalez*, 544 S.W.3d at 373. We will not reverse the conviction "[i]f we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect." *Id.* "In making this determination, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error." *Id.* Neither party has the burden to show harm; instead, the reviewing court assesses harm by examining the record as a whole. *Loch v. State*, 621 S.W.3d 279, 282 (Tex. Crim. App. 2021); *Werner v. State*, 412 S.W.3d 542, 547 (Tex. Crim. App. 2013).

### *Analysis*

Urvina argues the trial court erred in admitting his judgments of conviction as evidence of his prior convictions because the judgments themselves were more prejudicial than probative. He admits that his prior convictions were relevant evidence, but he argues the State could have proved those prior convictions in less prejudicial ways because the judgments "spelled out in graphic detail exactly what [Urvina] had been convicted of" instead of providing only the necessary information that he had prior convictions.

Assuming without deciding that the trial court erred in admitting the judgments, we conclude the alleged error did not affect Urvina's substantial rights, and therefore we must disregard it. *See* TEX. R. APP. P. 44.2(b); *Gonzalez*, 544 S.W.3d at 373.

There was strong evidence supporting Urvina's guilt. *See Gonzalez*, 544 S.W.3d at 373 (in determining whether substantial rights are affected, we consider nature of evidence supporting verdict and existence and degree of additional evidence indicating guilt). He did not dispute that he shot and killed Michelle; he only argued that he did so in self-defense, but as we discussed above, the jury could have reasonably rejected his self-defense argument.

The State did not emphasize the alleged error. *See id.* (in determining whether substantial rights are affected, we consider whether State emphasized error). The State introduced the judgments through Francine Vargas, the lead investigator in the case. The prosecutor asked Vargas to state, regarding one of the judgments, whether Urvina was named in the judgment and the offense for which he had been convicted. Vargas confirmed Urvina was named in the judgment and that the offense was "Assault caus[ing] bodily injury, family violence." Vargas did not discuss the other judgment. The State then proceeded to ask Vargas whether that conviction would have prohibited Urvina from carrying a firearm on the date he shot Michelle. There was no other mention of the details of the conviction. In closing, the prosecutor

10

referred to the jury instructions and argued, "What these say is that because of [the judgments of conviction], these two judgments, that [the] defendant was not allowed to have a firearm that night." The prosecutor did not mention the details of the convictions.

Urvina has not identified any harm resulting from the admission of these two judgments other than the judgments describing "in graphic detail" the offenses for which he was convicted, but the record shows those details were not discussed at trial. We therefore have a fair assurance from the record as a whole that this alleged error did not influence the jury or had but a slight effect. *See id.* Therefore, this alleged error did not affect Urvina's substantial rights, and we must disregard it. *See id.*; TEX. R. APP. P. 44.2(b). We overrule Urvina's second issue.

## CONCLUSION

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

Do not publish. TEX. R. APP. P. 47.2(b).

11